*206*

United States District Court
Southern District of Texas
FILED

**MAY 3 0 2000**

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EDWARD ALCALA, et al., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | Civil Action B 96-203 |
| | § | |
| ALEX PEREZ, in his official capacity | § | |
| Sheriff of Cameron County, Texas and | § | |
| Cameron County, Texas, | § | |
| | § | |
| Defendants. | § | |

---

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

---

TO THE HONORABLE COURT:

Alex Perez, in his official capacity as Sheriff of Cameron County, Texas and Cameron County, Texas (collectively, "**Cameron County**"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, file this their Reply to Plaintiffs' Response in Opposition to Motion for Partial Summary Judgment as follows:

### I.

### BACKGROUND FACTS

1.     Plaintiffs filed this lawsuit on November 8, 1996. Among other things, Plaintiffs seek compensation for hours they volunteered as reserve deputies. Plaintiffs claim that they are entitled to unpaid wages which were accrued more than three years from the date suit was filed.

---

2.    For purposes of this Motion only, Cameron County does not dispute that Plaintiffs should have been compensated for hours they volunteered as reserve deputies. Cameron County contends, however, that Plaintiffs' claims for wages which were accrued more than three years prior to the filing of their Complaint are barred by the statute of limitations[1].    Additionally, with regard to Plaintiffs who are lieutenants and sergeants, Cameron County contends that they are exempt from the overtime pay requirements of the Fair Labor Standards Act ("FLSA").

3.    Plaintiffs volunteered to work as reserve deputies for the sole purpose of being considered for promotions. Plaintiffs understood that they would not receive monetary compensation or be credited with compensatory time off for hours volunteered as reserve deputies. (See, Plaintiffs' Response, p. 3).

4.    Cameron County never promised to compensate Plaintiffs for their reserve deputy time. Rather, Sheriff Alex Perez intended that Plaintiffs would work for free and for the chance of receiving promotions. (See, Plaintiffs' Response, p. 3, citing Alex Perez depo. p. 50).

5.    Cameron County never compensated Plaintiffs for their reserve deputy time either in cash or in compensatory time off. (See, Plaintiffs' Response, p. 3).

6.    In 1989, the County implemented a policy of not allowing employees to accumulate more than 40 hours of compensatory time off. See, Overtime Compensatory Time Policy, attached as Exhibit "A" and incorporated as if fully set forth herein).

## II.

---

[1]The three years statute of limitations is applicable only if a "willful" violation of the FLSA were established. Otherwise, the applicable statute of limitations for a FLSA claim is two years. For purposes of their Motion for Summary Judgment only, Defendants will agree that the three years statute of limitations is applicable.

## ARGUMENTS AND AUTHORITIES

**A.     Volunteer Hours Were Never Banked. Therefore, Plaintiffs' Claim for Unpaid Wages Earned More Than Three Years Prior to Filing Suit Is Barred By The Statute of Limitations.**

Plaintiffs knew that they would not be compensated or credited with compensatory time off for hours worked as reserve deputies. Therefore, Plaintiffs' claim for wages earned more than three years from the date suit was filed is barred by the applicable three years statute of limitations. It is well established law that a cause of action for alleged unpaid wages under the FLSA is deemed to accrue "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co, Inc.*, 821 F.2d 261, 271 (5th Cir.) (Citing *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050-51 (5th Cir.), cert. denied, 414 U.S. 822 (1973)), modified on other grounds, 826 F.2d 2 (5th Cir. 1987). Therefore, the receipt of a paycheck that fails to reflect overtime pay or compensatory time off places Plaintiffs on notice that compensatory time off was not credited and could not be taken in the future. In the case at hand, not only did Plaintiffs' paycheck fail to reflect overtime pay or compensatory time off, Plaintiffs expressly understood that they would **not** receive any type of compensation for hours worked as reserve deputies.  Thus, as a matter of law, Plaintiffs cannot recover for unpaid hours which were worked more than three years before suit was filed.

Plaintiffs argue, however, that their unpaid hours were automatically "banked" as compensatory time off and, therefore, the statute of limitations does not begin to run until their employment is terminated. This argument fails for several reasons. First, the FLSA does not allow public employers to automatically compensate it employees with compensatory time off.

---

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT                                                     Page 3

Specifically, the FLSA authorizes public employers to provide compensatory time off in lieu of monetary overtime compensation if and only if compensatory time off were provided for under an agreement with the employee. The "agreement" can be made in one of three ways: through negotiation with individual employees, through negotiation with employees' representatives, or through negotiations with a recognized collective bargaining agent. 29 C.F.R. § 553.23.

In the case at hand, Cameron County neither negotiated with Plaintiffs nor agreed to pay them compensatory time off in lieu of monetary overtime compensation for the volunteer hours. To the contrary, Plaintiffs expressly understood they would **not** receive compensatory time credit for hours worked as reserve deputies. Nor did Plaintiffs expect to receive monetary compensation for hours volunteered as reserve deputies. (See, Gomez affidavit, attached as Exhibit "B" and incorporated as if fully set forth herein). Indeed, Plaintiffs concede in their Response that the only reason why they volunteered their time as reserve deputies was to increase their chances of being promoted. (See, Plaintiff's Response, p. 3). Thus, even if the Court were to assume that the County's practice of not compensating Plaintiffs were in violation of the FLSA, Plaintiffs had three years from the pay period where they were supposed to be paid for overtime hours worked to file suit. Having failed to do so, Plaintiffs are barred from seeking damages for overtime hours worked more than three years prior to the filing of their lawsuit.

Second, Plaintiffs' argument that the statute of limitations does not begin to run until the employment relationship is terminated would eviscerate the whole purpose of having a statute of limitations. As shown above, Plaintiffs knew that they would not get paid for their volunteer hours. If Plaintiffs believed they were entitled to compensation as overtime pay or compensatory time off,

they were clearly placed on notice that they would not be compensated. The FLSA expressly provides that an action to recover unpaid overtime compensation "shall be forever barred unless **commenced** within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years." 29 U.S.C. § 255(a). Under the FLSA, an action is "commenced" on the date the complaint is filed. 29 U.S.C. § 256. Since Plaintiffs did not file their complaint until 1986, claims for unpaid wages earned more than three years prior to that date are barred.

Plaintiffs' reliance on *Heaton v. Moore* and the Department of Labor's February 18, 1993 Opinion Letter are misplaced. In *Heaton,* the Eighth Circuit Court of Appeals simply held that public employers may not unilaterally force its employees to use accrued compensatory time off[2]. However, the court did **not** indicate that overtime hours worked but not paid are automatically banked as compensatory time off. To the contrary, the *Heaton* court found that compensatory time off was properly "banked" because the plaintiffs had expressly agreed to accept compensatory time off in lieu of cash paid overtime. Indeed, it was a condition of employment. Additionally, the *Heaton* court found that the employer **actually credited** plaintiffs with compensatory time off for each hour of overtime worked. *Heaton,* 43 F.3d 1176, 1178 (8th Cir. 1994). Because the court viewed "banked" compensatory time as the equivalent of employee-owned savings account, it ruled that employers may not require involuntary use of compensatory time.

---

[2]The United States Supreme Court recently held that public employers may require its employees to schedule time off in order to reduce the amount of accrued compensatory time. *Christensen v. Harris County,* 120 S.Ct. 1655 (2000).

Unlike the facts in *Heaton,* the Plaintiffs in the case at hand **never agreed** to accept compensatory time off in lieu of cash for work performed as reserve deputies. Indeed, the Plaintiffs in this case were **never** promised overtime compensation or compensatory time off if they volunteered to work as reserve deputies. The Plaintiffs volunteered to work as reserve deputies solely for the chance of getting promotions. More importantly, Cameron County never intended to pay, and the Plaintiffs never expected payment, for hours volunteered as reserve deputies. Thus, even if the Court were to assume that the arrangement between Plaintiffs and Cameron County were in violation of the FLSA, Plaintiffs had, at most, three years to file their suit.

Similarly, the Department of Labor's February 18, 1993 Opinion Letter does not stand for the proposition that the statute of limitations is inapplicable to claims for compensatory time. Like the *Heaton* court, The Opinion Letter states that a compensatory time plan requires:

> the parties [to] have an *agreement or understanding* and once the hours are "banked" for the employee, he/she is entitled to those hours off or to payment, whichever the case might be. These are hours worked and wages already earned and *agreed* to by the employer and the employee.

Opinion Letter, p.3 (emphasis added). The Department of Labor then concluded that hours in "the bank" as agreed upon between the parties would remain due the employees until either used by the employee or "paid out" by the employer. Thus, **when there is an agreement between the employer and employee that overtime hours worked would be banked as compensatory time off,** the statute of limitations is not applicable. The Opinion Letter **does not** address whether the statute of limitations is tolled if the employer expressly refuses to provide compensatory time off for overtime hours worked. Nor does the Opinion Letter address the applicability of the statute of limitations

when there is **no agreement** reached by the employer and employee concerning the accrual of compensatory time off.

Significantly, at least one court has held that the statute of limitations for claims of compensatory time off begins to run when the employee is notified that the employer would not honor compensatory time off. *Tennessee v. Archer*, 129 F.3d 1263 (6th Cir. 1997) (Unpublished Opinion). In *Archer*, Sheriff's Department employees brought suit for overtime wages allegedly due under the FLSA. The Sheriff had allowed indefinite banking of compensatory time off. However, in 1991, employees were notified that compensatory time off would no longer be granted for accumulated overtime. The Court held that the employees' claim for the compensatory time accrued, and the statute of limitations began to run, at the time of the Sheriff's notice.

Applying the *Archer* ruling to the case at hand, it is abundantly clear that Plaintiffs received notice from Cameron County that hours worked as reserve deputies would not be compensated. Specifically, Plaintiffs were well aware that Cameron County would not provide them with monetary compensation or credit them with compensatory time off for hours worked as reserve deputies. Similarly, it is clear that Cameron County did not intend to compensate Plaintiffs for the volunteer hours. That being the case, Plaintiffs' claim for hours worked as reserve deputies accrued at each pay period immediately following the work period during which the services were rendered. Accordingly, Plaintiffs' claim for unpaid wages earned more than three years prior to the filing of their Complaint is barred as a matter of law.

Additionally, Plaintiffs claiming more than 40 hours of compensatory time are barred by the statute of limitations. In 1989, Cameron County notified Plaintiffs that it would not pay for, or credit

as compensatory time off, overtime hours in excess of 40. (See Overtime Compensatory Time Policy, attached as Exhibit "A"). Like the notice provided by the employer in the *Archer* case, Plaintiffs were placed on notice that the County would not honor compensatory time over 40. Thus, applying the *Archer* holding to the case at hand, Plaintiffs had three years from 1989 to file suit for any overtime hours worked in excess of 40. Plaintiffs failed to do so. Therefore, to the extent that Plaintiffs are seeking in excess of 40 hours of compensatory time which were accrued more than three years prior to the filing of suit, their claims are barred.

B.     **Exemption Status of Sergeants and Lieutenants.**

As a matter of law, employees working as sergeants and lieutenants are exempt from the overtime pay requirements. Under the FLSA, employees are exempt from the overtime pay requirements if they are paid on a "salary basis" and if they perform executive, administrative or professional duties. 29 U.S.C. §213(a)(1). As shown below, sergeants and lieutenants meet both requirements.

1.     Sergeants and Lieutenants Are Paid On a Salary Basis.

Sergeants and lieutenants are paid on a salary basis. Under the FLSA, an employee is considered to be paid on a "salary basis" if he regularly receives each pay period a predetermined compensation. 29 C.F.R. §541.118. However, the employer may make deductions for absences from work for a day or more without losing the exempt status. 29 C.F.R. 541.118(a)(2). Rosa Gomez, who served as the Sheriff's Department payroll clerk, testified that she did not calculate the wages to be paid each officer. (Gomez depo. at 15). Rather, it was her job to collect and verify time sheets. (Gomez depo. at 11-12). Ms. Gomez had no authority to make deductions from paychecks. (See

Rosa Gomez Affidavit attached as Exhibit "B"). As long as an officer turned in a time sheet, Ms. Gomez forwarded his name to the auditor's office as being qualified to receive a full paycheck. Regardless of the number of the number of hours actually worked or missed by the officer, the County would pay him **full pay** if a time sheet were submitted. (Gomez depo. at 26, 30). Thus, it is abundantly clear that officers were paid on a salary basis.

There is absolutely no evidence that the County made improper deductions from salaries. However, Plaintiffs assert that when an officer is not present for his regularly scheduled shift, his absence would have to come from some category of accrued time. (See Plaintiffs' Response, p. 11). According to Plaintiffs, this deduction shows that officers were not paid a salary basis. Plaintiffs argument fails for two reasons. First, the deposition excerpts cited in Plaintiffs Response Brief do not support this argument. When posed with a hypothetical question from opposing counsel regarding half days off, Ms. Gomez testified that an officer may be docked if he did not have any compensatory time, vacation time, or sick leave in the bank. However, Ms. Gomez pointed out that this never actually happened:

> Q.    Okay. In keeping attendance reports, if an officer took a half a day off, say, to go fishing or just a mental health day or whatever . . . and he didn't have any comp time, vacation time, sick leave, nothing in the bank, would you take off?
>
> A.    Dock him?
>
> Q.    Yeah.
>
> A.    Yes, **but I believe it's never happened with an officer.** They always exceed their hours. It's happened with the office personnel, **but not the officers.**

---

Gomez depo. at 35 (emphasis added).  Indeed, Plaintiffs can point to no instance where an officer's salary was actually docked for missing half days when he had no accrued leave remaining.

Second, even if the Court were to assume that Cameron County made deductions for partial day absences (which it did not do), such deductions would **not** defeat exempt status for public employees.  On January 7, 1987, the Department of Labor ("DOL") announced that an otherwise exempt public employee will not lose his exempt status because his pay is reduced for absences of less than one day:

> [The Department of Labor] will not deny an exemption under Section 13(a)(1) [i.e, exemptions for executive, administrative, and professional employees] to an otherwise exempt public employee whose pay is reduced by deductions for absence(s) **of less than a day** for personal reasons, or because of illness or accident, because the employee does not have, or has exhausted available paid leave for such absence(s).

DOL Policy Statement, January 7, 1987 (emphasis added).  Moreover, in 1992, the DOL issued special regulations authorizing public employers to make deductions for partial day absences without destroying the salary basis of compensation for exempt employees:

> An employee of a public agency who otherwise meets the requirements of §541.118 [i.e., the salary basis test] shall not be disqualified from exemption . . . on the basis that such employee is paid according to a pay system . . . which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury **of less than one workday** when accrued leave is not used by the employee because . . . accrued leave has been exhausted.

29 C.F.R §541.5(d) (emphasis added).  Thus, under applicable DOL policy and regulation, Cameron County may make deductions for partial day absences and still retain overtime pay exemptions for sergeants and lieutenants.

2.    <u>Sergeants and Lieutenants Qualify As Executive Employees.</u>

As shown in Cameron County's Motion for Partial Summary Judgment, lieutenants clearly qualify as executive employees because they are in charge of the day-to-day operation of the jail. Similarly, sergeants qualify as executive employees because they are directly responsible for the handling of prisoner issues (i.e., a subdivision of the jail). Although these employees spend some of their time on non-exempt work, more than 50 percent of their time is devoted to duties related to managing their department or sub-department. That being the case, sergeants and lieutenants qualify as executive employees, and are exempt from the FLSA overtime pay requirements.

Plaintiffs assert that sergeants and lieutenants are "working foremen" and, therefore, lose their exempt status if they spend more than 20 percent of their time on non-exempt work. See, Plaintiffs' Response, p. 16. This argument would be valid if and only if the exempt employee were paid less than $250 per week and subject to the longer exemption test. This is not the case here. Sergeants and lieutenants qualify as executive employees under a shorter exemption test because they are compensated more than $250 per week. 29 C.F.R. §541.1. Under this short test, an employee **shall be deemed to meet all the requirements of the executive exemption** if his "primary duty" consists of managing a customarily recognized department or subdivision thereof. 29 C.F.R. §541.1. The DOL regulations state that "an employee who spends over 50 percent of his time in management would have management as his primary duty." 29 C.F.R. §541.103. Significantly, the regulations further state that an employee may still be an exempt executive if he spends less than 50 percent of his time on management matters; such an employee's status depends on whether his managerial duties are more important than his other duties, how frequently he exercises discretionary powers,

and how free he is from supervision. There is no regulation or case law supporting Plaintiffs' attempt to transpose the longer exemption test (which, among other things, restricts exempt employees from devoting more than 20 percent of their time to non-managerial duties) onto the shorter exemption test.

Cameron County has shown in its Motion for Partial Summary Judgment that sergeants and lieutenants are paid a salary in excess of $250 per week, and that they customarily direct the work of two or more employees, and that they do not devote more than 50 percent of their time to non-exempt work. Accordingly, these employees qualify as executives, and are exempt from the FLSA's overtime pay requirements.

**IV.**

**CONCLUSION**

The Court should dismiss Plaintiffs' claims for unpaid wages which were accrued three years before the filing of their lawsuit because such claims are barred by the statue of limitations. It is well established law that an injury under the FLSA occurs when employees are issued paychecks that do not include compensation for overtime worked during the prior pay period. The undisputed evidence shows that Plaintiffs expressly understood they would not receive monetary compensation or compensatory time credit for volunteer hours. Indeed, detention officers were never paid, or credited with compensatory time, for hours worked as reserve deputies. Having failed to file their complaint for unpaid wages within three years, Plaintiffs' claim is barred. Similarly, Plaintiffs claiming over 40 hours of compensatory time which were accrued three years prior to the filing of suit should be barred by the statute of limitations because, according to the County's policy announced in 1989,

compensatory hours cannot exceed 40 hours. Thus, employees who allegedly earned more than 40 hours of overtime but not compensated in cash for those hours are barred from claiming compensation unless suit was filed within three years from the time such compensatory time was accrued. Finally, the Court should dismiss claims for overtime pay by sergeants and lieutenants because they qualify as managerial employees with authority over a department or subdivision. As such, sergeants and lieutenants are exempt from the overtime pay provisions of the FLSA.

## V.
## REQUEST FOR RELIEF

For the foregoing reasons, Alex Perez, in his official capacity as Sheriff of Cameron County, Texas and Cameron County, Texas respectfully request that the Court grant their Motion for Partial Summary Judgment, that the Court award Defendants their costs, and that Defendants be given all other relief to which they are justly entitled.

Respectfully,

For Cameron County
Cameron County Civil Legal Department
964 East Harrison Street
Brownsville, Texas 78578
(210) 550-1448
(210) 544-0801 (Facsimile)

BY: _____
Richard O. Burst
Attorney in Charge
Texas State Bar #00785586
S.D. No. 15515

Dylbia L. Jefferies
Of Counsel
Texas State Bar #00786516
S.D. No. 17065

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been sent to counsel for Plaintiff:

Mr. James A. Herrmann
1205 E. Tyler Avenue
P.O. Box 2541
Harlingen, TX 78551-2541

by placing a copy of the same, properly wrapped and addressed, in the United States mail, first class, postage prepaid, certified, return receipt requested, this 3 0 day of May, 2000

_____

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT**                                    Page 14

# ◈ U.S. Department of Labor

◁ Prev     ▷ Next

**Content Last Revised: 8/19/92**

--DISCLAIMER--

CFR Code of Federal Regulations Pertaining to ESA
└ Title 29 Labor
  └ Chapter V Wage and Hour Division, Department of Labor
    └ Part 541 Defining and Delimiting the Terms "Any Employee Employed In A Bona Fide Executive, Administrative, or Professional Capacity (Including Any Employee Employed In the Capacity of Academic Administrative Personnel or Teacher In Elementary or Secondary Schools), or In the Capacity of Outside Salesman"
      └ Subpart A  General Regulations

## 29 CFR 541.5d – Special provisions applicable to employees of public agencies.

- **Section Number:** 541.5d
- **Section Name:** Special provisions applicable to employees of public agencies.

  (a) An employee of a public agency who otherwise meets the requirements of Sec. 541.118 shall not be disqualified from exemption under Secs. 541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because--

  (1) permission for its use has not been sought or has been sought and denied;

  (2) accrued leave has been exhausted; or

  (3) the employee chooses to use leave without pay.

  (b) Deductions from the pay of an employee of a public agency for absences due to a budget-required furlough shall not disqualify the employee from being paid ``on a salary basis'' except in the workweek in which the furlough occurs and for which the employee's pay is accordingly reduced.

129 F.3d 1263 (Table)
Unpublished Disposition

(Cite as: 129 F.3d 1263, 1997 WL 720406 (6th Cir.(Tenn.)))

NOTICE: THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA6 Rule 28 and FI
CTA6 IOP 206 for rules regarding the publication and
citation of unpublished opinions.)

Thomas ARCHER, Larry Bradley, Bruce Bullis,
Darrell Chambers, Joe Delp, Jr.,
Mark Ducker, Spencer Fletcher, William K. Harr,
Darrell Hunt, Edward G. Jones,
Boda Lawson, David Martin, George Ann Mullins,
Steve Mullins, David Musser,
Johnny Murray, Charles Reed, Billie Joe Richardson,
Mike Rutherford, Randy
Simpson, Ermal Sparks, Paul Taylor, David K.
Waye, Dewolfe Waye, Glenn White,
William Wilks, John Young, Norman Odum, Ty
Boomershine, Robert Bowling, Sr.,
Thomas Cornett, Mark L. Gott, Earnest Hodges,
Mark Murph, Kip Parks, George T.
Peters, Kathy Peters, Bobby Lee Russell, William R.
Smith, Jr., Dean Stuntz,
Steven Williams, Harry Noel, Jeffrey Parker,
Plaintiffs-Appellees and Cross-
Appellants,
v.
SULLIVAN COUNTY, TENNESSEE, Defendant-
Appellant and Cross-Appellee.

Nos. 95-5214, 95-5215.

United States Court of Appeals, Sixth Circuit.

Nov. 14, 1997.

Before NELSON and BATCHELDER, Circuit
Judges, and McKEAGUE, District Judge. [FN*]

FN* The Honorable David W. McKeague, United
States District Judge for the Western District of
Michigan, sitting by designation.

DAVID A. NELSON, Circuit Judge.

**1 The plaintiffs, who are present and former
employees of the Sullivan County, Tennessee,
Sheriff's Department, sued the county in federal court
for overtime compensation allegedly due under the
Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.,

and for damages allegedly recoverable under state
law. Following a bench trial, a magistrate judge
awarded damages to some of the plaintiffs on their
FLSA claims, dismissed the FLSA claims of other
plaintiffs as time-barred, and awarded judgment to the
county on the state law claims. Both the plaintiffs and
the county have appealed. For the following reasons,
we shall affirm the magistrate's judgment in part and
vacate it in part.

I.

In Garcia v. San Antonio Metro. Transit Authority,
469 U.S. 528 (1985), the Supreme Court held the
provisions of the Fair Labor Standards Act applicable
to state and local governments. In response,
Congress amended the Act to require compliance by
affected governments as of April 15, 1986.

Prior to the Garcia decision, the Sullivan County
Sheriff's Department had followed a practice of
granting compensatory time off in lieu of overtime
pay. On April 1, 1986, the Sullivan County
Commission passed an ordinance providing that the
county would abide by all applicable sections of the
Fair Labor Standards Act. The Sheriff's Department
continued to grant compensatory time off in lieu of
overtime pay

On October 27, 1988, Chief Deputy Sheriff Randy
Grimes distributed a memorandum to department
employees advising that, due to the Garcia decision,
the county was required to pay for overtime. The
employees were instructed to report the number of
uncompensated overtime hours they had accumulated
from May 1, 1985, through October 27, 1988. All of
the plaintiffs complied with this instruction. The
county did not pay any overtime compensation for the
hours reported, but several employees continued to
take compensatory time off.

In 1991 the Sheriff advised department employees
that overtime reported in response to the Grimes
memorandum would no longer be honored because it
could not be substantiated. The plaintiffs then filed
this lawsuit.

The magistrate judge, who tried the case by consent
of the parties, concluded that the plaintiffs had failed
to carry their burden of proof on the state law claims,
which sounded in contract and quasi contract or unjust
enrichment. He also concluded that the county had

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Case 1:96-cv-00203  Document 206  Filed in TXSD on 05/30/2000  Page 17 of 30

violated the plaintiffs' rights under the FLSA by denying them both overtime pay and compensatory time off for overtime work performed. As to the plaintiffs (15 in number) hired after April 14, 1986, however, the magistrate held that their claims were barred by the statute of limitations. The remaining 28 plaintiffs were awarded overtime compensation totaling $86,327.15, plus "liquidated damages" in an equal amount, plus attorney fees and costs.

## II.

The county makes the following contentions on appeal: (1) that the trial court should have dismissed the FLSA claims of all of the plaintiffs as time-barred; (2) that the Act does not permit compensatory time off or its backpay equivalent as a remedy; and (3) that the trial court erred in awarding liquidated damages. In their cross-appeal, the plaintiffs assert: (1) that the FLSA claims of personnel hired after April 14, 1986, were not barred by the statute of limitations; (2) that the trial court should have awarded damages for overtime worked in excess of 480 hours; and (3) that the trial court erred in dismissing the state law claims.

## III.
### A. FLSA Statute of Limitations
#### 1. Accrual of Cause of Action

**2 An action to recover unpaid overtime compensation must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An action is "commenced," under the FLSA, on the date the complaint is filed, subject to certain exceptions. 29 U.S.C. § 256. In the case of a collective action such as this one, if the individual claimants do not immediately file written consents to become parties plaintiff the action is considered to be commenced when the written consents are filed. 29 U.S.C. § 256(b).

The plaintiffs' complaint was filed on September 16, 1991. Their FLSA action was not considered to be commenced until December 23, 1991, when the individual plaintiffs filed written consent forms pursuant to 29 U.S.C. § 256(b).

A cause of action is deemed to accrue, as a general rule, "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." Halferty v. Pulse Drug Co., Inc., 821 F.2d 261, 271 (5th Cir.), modified on other grounds, 826 F.2d 2 (5th Cir.1987). The plaintiffs claim a right to compensation for overtime work performed from May 1, 1985, through October 26, 1988. Because this period was more than three years before the plaintiffs commenced their FLSA action, the county contends that the action is barred by the statute of limitations.

The magistrate judge concluded that the FLSA claims of those plaintiffs hired before April 15, 1986, did not accrue until 1991, when Sheriff's Department employees were informed that compensatory time off would no longer be granted for accumulated overtime. We agree with this conclusion. The Sheriff's Department made it a practice to let employees accrue compensatory time which could be banked indefinitely. Given this practice, the receipt of a paycheck that failed to reflect overtime pay could not put anyone on notice that compensatory time off could not be taken in the future.

Under 29 U.S.C. § 207(o)(2), a public agency is authorized to provide compensatory time off in lieu of overtime pay only pursuant to a collective bargaining agreement--which was not present here--or pursuant to "an agreement or understanding arrived at between the employer and the employee before the performance of the work." The statute provides further that in the case of employees not covered by a collective bargaining agreement, if such employees were hired before April 15, 1986, "the regular practice in effect on April 15, 1986, with respect to compensatory time off ... shall constitute an agreement or understanding...." The magistrate judge concluded, correctly, that the employees hired before April 15, 1986, had "an agreement or understanding" that they would receive compensatory time off in lieu of overtime pay by reason of the "regular practice in effect on April 15, 1986." The FLSA claims of these individuals did not accrue, therefore, until the county gave notice that accumulated compensatory time could no longer be used.

**3 The plaintiffs hired on or after April 15, 1986, however, had no agreement or understanding that they would receive compensatory time off in lieu of overtime pay; not having met the condition set forth in the statute, they could not rely on the "regular practice." The county was thus required to pay these employees overtime compensation on each payday following the date in which the overtime was worked.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Because the county was not authorized under the FLSA to grant them compensatory time off in lieu of overtime pay, the injury to these plaintiffs did not occur when the county repudiated its supposed compensatory time obligation. Rather, the injury occurred--and the county violated the statute--when the plaintiffs were issued paychecks that did not include compensation for overtime worked during the prior pay period. The claims of the plaintiffs hired on or after April 15, 1986, accrued upon the receipt of the paychecks. Because this was more than three years before commencement of the action, the magistrate was correct in holding the claims barred by the statute of limitations. Cf. Beale v. District of Columbia, 789 F.Supp. 1172, 1176 (D.D.C.1992) ("[P]olice employees were entitled to pay in money only for overtime worked during [the] period because there was no collective bargaining agreement providing for payment in any other form. All police sergeants and officers wronged by the District's failure to pay had two and three years, respectively, under 29 U.S.C. § 255 to sue the District for the pay it owed.... Payment in comp time for that period was not an option, then or now.").

The plaintiffs contend that the magistrate erred in not awarding them damages for overtime worked in excess of 480 hours. We disagree. 29 U.S.C. § 207(o)(3)(A) provides that employees engaged in public safety activities "may accrue not more than 480 hours of compensatory time for hours worked after April 15, 1986." Once an employee has accrued 480 compensatory hours, the employer must pay overtime for any additional overtime work performed. Id. The plaintiffs with more than 480 hours of compensatory time were thus in the same position as the plaintiffs hired on or after April 15, 1986: the county was under a statutory duty to pay them overtime compensation for any additional overtime worked, and compensatory time off could not be substituted. The claims for such compensation accrued with the receipt of each paycheck in which the compensation was not included, just as the claims of the later-hired plaintiffs did. The plaintiffs' claims for overtime worked in excess of 480 hours were time-barred.

## 2. Equitable Tolling

If the doctrine of equitable tolling were to be applied in this case, as the plaintiffs contend it should be, none of the claims for overtime compensation would be barred by the statute of limitations. [FN1] The doctrine permits a plaintiff to avoid the bar of the statute of limitations if "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir.1990), cert. denied, 501 U.S. 1261 (1991). The factors to be considered in this connection include the following: (1) whether the plaintiffs lacked actual notice of their rights and obligations; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced if the statute were tolled; and (5) the reasonableness of the plaintiffs' remaining ignorant of their rights. EEOC v. Kentucky State Police Dep't, 80 F.3d 1086, 1094 (6th Cir.), cert. denied, 117 S. Ct 385 (1996).

> FN1. Although the magistrate judge did not address the equitable tolling issue explicitly, the issue was presented at trial, and we find it implicit in the magistrate's opinion that the plaintiffs failed to bring themselves within the doctrine.

**4 Although the plaintiffs may have lacked actual notice of the county's violation of the Act and of the filing deadline, it is "well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling." Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir.1991). The statute itself gave the plaintiffs constructive notice of the fact that the county was violating their rights under the FLSA and of the deadline for filing suit.

The statute, as we have seen, provides that employees must receive overtime pay for any overtime work performed after accrual of 480 hours of compensatory time. The statute further provides that, absent an agreement to the contrary entered into before the performance of the work, employees hired on or after April 15, 1986, must receive overtime pay for any overtime work performed. The county's practice of awarding compensatory time does not change the fact that none of the plaintiffs received the overtime pay to which he was entitled under the FLSA. The plaintiffs knew that they were not receiving any overtime pay--and that knowledge constituted knowledge of facts triggering the accrual of a cause of action.

The Grimes memorandum stated, moreover, that "[i]n May of 1985 the Garcia Decision was handed down by the Supreme Court requiring the county to pay overtime." This reference to Garcia and the requirement that the county pay overtime gave the plaintiffs additional notice of their rights under the Act.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Case 1:96-cv-00203   Document 206   Filed in TXSD on 05/30/2000   Page 19 of 30

The plaintiffs contend that the doctrine of equitable tolling should apply because the county failed to post the required Department of Labor notice of employees' rights under the FLSA. The record contains an example of the required notice. It says that the Fair Labor Standards Act requires that employees of state and local governments receive overtime pay or compensatory time off where the latter is "provided pursuant to an agreement or understanding which meets the requirements of the Act." The notice does not mention the distinction between employees hired before April 15, 1986, and those hired on or after that date. Neither does it mention the 480 hour rule or the limitations period for filing suit. We are not persuaded that the county's failure to post such a notice justifies invocation of the tolling doctrine.

Although the plaintiffs assert that it would be unfair to bar any of their claims given the county's violation of the act, we note, as did the Beale court, that "the entire purpose of statutes of limitations is to provide finitude to liability for wrongs." 789 F.Supp. at 1176. We are also mindful of Judge Posner's admonition in Cada that statutes of limitations "protect important social interests in certainty, accuracy, and repose" and should not be trivialized by "promiscuous application of tolling doctrines." 920 F.2d at 453. The doctrine of equitable tolling does not save the plaintiffs' claims here.

B. FLSA Remedies

The magistrate judge held that ordering compensatory time off is not a form of relief available with respect to the compensatory time claims of the plaintiffs hired before April 15, 1986. Accordingly, he granted the prevailing plaintiffs "an award of money damages for the amount of overtime which the compensatory time represents." Finding that the county had not acted in good faith, the magistrate also awarded the prevailing plaintiffs "liquidated damages" in a like amount. See 29 U.S.C. § 216(b).

**5 We disagree with the magistrate's analysis of the remedies available to the plaintiffs. His conclusion on the unavailability of compensatory time was based on 29 U.S.C. § 216(b), which provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." It is true that § 216 does not list compensatory time as an

available remedy. But § 207 provides that a public agency may provide compensatory time in lieu of overtime compensation under certain conditions, and § 215(a)(2) makes it unlawful for an employer to violate any of the provisions of § 207. The district courts are authorized by § 217 "to restrain violations of section 215...."

The county violated § 215(a)(2) by failing to provide compensatory time off, and the district court thus had authority to issue an injunction restraining the county from failing to provide such time. [FN2] See Martin v. Funtime, Inc., 963 F.2d 110, 114 (6th Cir.1992) (an employer's current FLSA compliance does not prevent a court from issuing an injunction to remedy past wrongdoing). Although the plaintiffs asked for money damages, the only claims not barred by the statute are those for compensatory time, not for monetary compensation. The plaintiffs' amended complaint, moreover, does pray for "specific performance of Plaintiffs' contract with the Defendant." The equitable remedy of specific performance having been made available under § 217, the magistrate should have ordered the county to provide compensatory time to the prevailing plaintiffs.

> FN2. Our conclusion that 29 U.S.C. § 217 gives a district court jurisdiction to restrain a violation of § 215 that consists of withholding compensatory time is not affected by the fact that § 217 explicitly authorizes "the restraint of any withholding of payment of minimum wages or overtime compensation" but does not explicitly mention compensatory time. Without the explicit statutory reference to the withholding of dollars, there would be a serious question as to whether such a withholding could properly be restrained through an injunction; the availability of a money judgment would mean, in all probability, that there would be an adequate remedy at law for violations of that type. Because no such problem would exist with the respect to the withholding of compensatory time, there was no reason for Congress to say explicitly that the power to restrain violations of § 215 covers cases where the wrong consists of refusing to honor compensatory time commitments.

Because the plaintiffs are only entitled to compensatory time, "liquidated damages" are not authorized under § 216. As we read that section, such damages are available only

This interpretation is supported by the legislative history of § 217. Prior to 1961, the statute contained an express prohibition against injunctive relief of the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Case 1:96-cv-00203 Document 206 Filed in TXSD on 05/30/2000 Page 20 of 30

type that is now explicitly authorized. Injunctions relating to compensatory time were not mentioned in the pre-1961 law, which suggests that there was no reason to mention compensatory time in the 1961 amendment. where the employer is liable for "unpaid overtime compensation"--and in the instant case, the liability for unpaid overtime compensation has been extinguished by the passage of time.

### C. State Law Claims

The county treated the plaintiffs as salaried employees prior to July 1, 1989, and the plaintiffs assert that the county violated a contractual or quasi-contractual duty to compensate them as hourly employees. The magistrate found that the plaintiffs failed to carry their burden of proving the existence of an express or implied agreement that they would be paid as hourly employees. If some of the plaintiffs originally had oral understandings that they were hourly employees, as the magistrate noted, they subsequently ratified their status as salaried employees. The magistrate found no evidence of unjust enrichment, and we see none.

**6 The magistrate's findings of fact were not clearly erroneous, and we find no infirmity in his application of law to those facts. The award of judgment to the county on the plaintiff's state law claims was proper.

### IV.

We AFFIRM the decision as to liability, VACATE the award of damages, and REMAND this matter to the district court with instructions to order the county to provide compensatory time to the prevailing plaintiffs.

McKEAGUE, District Judge, dissenting.

In Part III.A.2, above, the majority observes that if the doctrine of equitable tolling were applicable in this case, none of the plaintiffs' claims for overtime compensation would be barred by the statute of limitations. Because I disagree with the majority's conclusion that the doctrine is not applicable, I respectfully dissent.

The majority recognizes that application of the doctrine is the function of five considerations. However, the majority expressly considers only three of the five factors and finds the doctrine inapplicable, although those three factors arguably militate in favor of equitable tolling. In my opinion, as set forth

below, all five factors weigh in favor of tolling the statute of limitations.

The doctrine permits a plaintiff to avoid the bar of the statute of limitations if he or she is excusably ignorant of the filing deadline. E.E.O.C. v. Kentucky State Police Dep't, 80 F.3d 1086, 1095 (6th Cir.1996), cert. denied, 117 S.Ct. 385 (1996). The first factor considered in determining excusable ignorance is whether plaintiffs lacked actual notice of the filing requirement. As implicitly recognized by the majority, the magistrate judge below found plaintiffs did not have actual knowledge that the County had violated the FLSA and of the need for legal action to protect their rights until 1991. That is, plaintiffs were earlier unaware of wrongdoing by the County that would have triggered inquiry concerning the filing requirement until sometime much less than two years before they filed suit. On this point, there is no dispute. Having commenced their FLSA action on December 23, 1991, it is clear that plaintiffs proceeded within a reasonable period after they obtained actual notice that their rights had been violated and well within the twoyear period of limitation prescribed at 29 U.S.C. § 255(a). The first factor thus weighs in favor of finding plaintiffs excusably ignorant in not having earlier proceeded against the County.

The second factor is whether plaintiffs lacked constructive notice of their rights and obligations under the FLSA. Plaintiffs may be found to have had constructive notice if they had retained counsel who should have known of the filing requirement. See Jackson v. Richards Medical Co., 961 F.2d 575, 579 (6th Cir.1992); Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir.1991). There is no evidence that any of the plaintiffs had even consulted with an attorney prior to 1991.

Constructive notice might also be attributed to plaintiffs if the County had fulfilled its duty of conspicuously posting notices in the workplace explaining employees' FLSA rights, as required by 29 C.F.R. § 516.4. See E.E.O.C., 80 F.3d at 1094-95; Jackson, 961 F.2d at 579-80. Here, however, it is undisputed that the required notices were not posted by the County.

**7 Nonetheless, the majority concludes plaintiffs had constructive notice by virtue of the mere existence of the FLSA, citing Rose v. Dole. The mere existence of the pertinent statute of limitations cannot be deemed sufficient to impute constructive notice for

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Case 1:96-cv-00203  Document 206  Filed in TXSD on 05/30/2000  Page 21 of 30

purposes of equitable tolling. If it were, the constructive notice inquiry would invariably be eliminated. The very question posed by the doctrine of equitable tolling is whether a plaintiff's ignorance of the limitation period should be excused. That the limitation period is specifically prescribed in legislation sheds no light upon this question. Rose v. Dole stands merely for the proposition that "ignorance of the law alone is not sufficient to warrant equitable tolling." Id. at 1335. That is, a plaintiff's lack of actual notice alone is not sufficient. This is undeniably a true and just statement of the law. That is why a five- factor test has evolved. As all five factors are duly considered in this case, it becomes readily apparent that much more than mere ignorance of the law is presented.

In further support of the conclusion that plaintiffs had constructive notice, the majority cites the October 27, 1988 memorandum of Chief Deputy Sheriff Randy Grimes. [FN1] The Grimes memorandum was distributed to all Sheriff's Department employees, soliciting information from them because the County was thenceforward required, by "the Garcia decision," to pay overtime compensation. The memorandum thus implied that the County would have to terminate its then existing practice of allowing employees to take compensatory time in lieu of paying overtime compensation for overtime worked. The memorandum required employees to report the total uncompensated overtime hours they had accumulated since May 1, 1985. The County did not pay overtime compensation for the hours claimed. Yet, several employees were allowed to continue using compensatory time until some time in 1991, when Sheriff Keith Carr advised that overtime hours claimed pursuant to the Grimes memorandum would not be honored.

FN1. he full text of the memorandum is as follows: We have been advised bythe County Attorney and the Director of Accounts & Budgets that due to new regulations from the Labor Department, there is certain information needed that I currently don't have.
In May of 1985 the Garcia Decision was handed down by the Supreme Court requiring the county to pay overtime. In response to this ruling, I need each and every employee in this Department to fill out one of the forms supplied. Please indicate the total number of uncompensated overtime hours accumulated since May 1, 1985, through October 26, 1988. This is to include such things as in-service training and approved overtime you have not claimed. Do not include hours that you have

requested payment for or hours your supervisor has in his records. Sign the form and turn in to my office no later than Wednesday, November 2, 1988.

So, what is the significance of the Grimes memorandum? The majority finds significance in its reference to "the Garcia decision." Yes, the Supreme Court held, in Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985), that the FLSA protections were applicable to state and municipal employers. The Grimes memorandum, however, does not provide the official name and citation of the Garcia opinion and does not even mention the FLSA. Such a casual reference to a Supreme Court ruling in a memorandum whose apparent purpose was simply to solicit information from employees, can hardly be deemed to have given plaintiffs, nonlawyers, constructive notice that their rights to overtime compensation had been altered and were now defined by the FLSA, and that any action enforcing their new rights needed to be commenced within the prescribed two or three-year period. Moreover, when the memorandum is viewed in light of the County's failure to post the required Department of Labor notices and the County's continuing practice of allowing employees to use compensatory time, the significance assigned to it by the majority appears to be decidedly ill-founded.

**8 Accordingly, I would find that plaintiffs lacked both actual notice and constructive notice.

The third factor is the diligence with which plaintiffs pursued their rights. The majority does not mention it. The County contends plaintiffs cannot be deemed to have acted with due diligence by first acting to enforce their rights over three-and-a-half years after having been advised that the County was required to pay overtime compensation. Again, the County reads too much into the Grimes memorandum. It cannot be fairly construed as notice that compensatory time would no longer be awarded or as a disavowal of the County's duty to pay past accrued overtime compensation. The memorandum included a solicitation of employees' estimates of accumulated overtime hours worked, implying that the County intended to honor the hours claimed. Then, after the memorandum, until 1991, the County continued to allow use of compensatory time for past accrued overtime in accordance with the preexisting practice. The status quo having thus apparently been maintained, plaintiffs' failure to commence this action prior to 1991 does not bespeak a lack of due diligence. Rather, plaintiffs appear to have acted with

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Case 1:96-cv-00203 Document 206 Filed in TXSD on 05/30/2000 Page 22 of 30

reasonable diligence after Sheriff Carr first announced that past overtime would not be honored, filing their complaint within months thereafter.

The majority also neglects the fourth factor, whether the County would be prejudiced if the statute of limitations were tolled. The County complains that it would be unfairly prejudiced, being handicapped in its ability to verify the overtime hours claimed because Sheriff's Department payroll records have since been destroyed. The County argues it should not be penalized for destroying the records as permitted by federal regulations. See 29 C.F.R. §§ 516.5 and 516.6. The County is entitled to no sympathy. The County has neither contended nor presented any evidence that plaintiffs did not work the claimed overtime hours or that the hours claimed are overstated or otherwise inaccurate. The asserted prejudice is thus purely hypothetical. Moreover, it is a prejudice whose burden should in fairness be borne by the County, it having failed to establish clear and defined overtime procedures, and having destroyed the payroll records with knowledge that employees were continuing and expecting to use compensatory time accrued more than three years earlier. To recognize this sort of prejudice as an impediment to tolling would be to allow the County to profit from its own wrongdoing, a result contrary to the rationale behind equitable tolling. See Vana v. Mallinckrodt Medical, Inc., 70 F.3d 116 (Table), 1995 WL 675597 at * *1(6th Cir.), quoting Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 232-33 (1959) (principle "that no man may take advantage of his own wrong" has frequently been employed to bar reliance on statutes of limitations). Accordingly, the County would not be unfairly prejudiced if the statute were tolled.

**9 The fifth factor is the reasonableness of plaintiffs' remaining ignorant of their rights. Because the County appeared to have maintained the status quo, notwithstanding Garcia and the Grimes memorandum, and because the County failed to post the required notices, I would find plaintiffs' conduct not unreasonable. The majority accepts the County's argument that the failure to post the required notices does not, in itself, warrant equitable tolling. This may be true, but where plaintiffs appear to have lacked actual and constructive notice of their rights, the County's failure to post the notices is certainly relevant to determining the reasonableness of plaintiffs' actions and the appropriateness of tolling the statute of limitations. See E.E.O.C., 80 F.3d at 1094-95 (failure to post notices contributed to finding

of affirmative misleading conduct, justifying tolling); Jackson, 961 F.2d 579-80 (if employee's ignorance of rights is due to employer's failure to post notices, initial case for equitable tolling has been made); Clark v. Resistoflex Co., 854 F.2d 762, 768 (5th Cir.1988) (if employer neglects to post required notice, statute is tolled until employee acquires actual or constructive knowledge of rights).

The standard Department of Labor FLSA notice does not expressly set forth the governing statute of limitations. It does advise, however, that law enforcement personnel's rights to overtime compensation and compensatory time are prescribed in the FLSA and that more information may be obtained by calling the Wage and Hour Division of the Department of Labor. In light of these contents, the County's failure to post the notices cannot reasonably be deemed immaterial. Had the notices been conspicuously posted as required, plaintiffs' plea for equitable relief would be much weaker. Conversely, although the County's failure to post the notices would not, in itself, justify relief, viewed in the totality of circumstances, it contributes meaningfully to a strong case for equitable tolling.

Finally, the majority cautions against trivializing statutes of limitations through promiscuous application of equitable tolling, citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir.1990). I agree wholeheartedly. Yet, as Judge Posner also observed in Cada, "When we are speaking ... of equitable tolling, we are ... dealing with two innocent parties and in these circumstances the negligence of the party invoking the doctrine can tip the balance against its application." Id. at 453. Here, the parties are not entirely innocent. Certainly, plaintiffs might have been more vigilant in pursuing their rights. On the other hand, though the County may not have engaged in active wrongdoing, its greater blameworthiness in this dispute is obvious and cannot be ignored. The County does not dispute the evidence that plaintiffs did perform the claimed overtime services and have not been compensated. The overtime work was done pursuant to mutual understanding that it would be rewarded through compensatory time. The Sheriff's Department changed the existing practice without notice to employees and opportunity for them to use past accrued compensatory time. Considering the relative equities of the parties' positions under the unique circumstances of this case within the framework of the governing five-factor test, the balance tips decidedly in favor of equitable tolling.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

129 F.3d 1263 (Table)
(Cite as: 129 F.3d 1263, 1997 WL 720406, **10 (6th Cir.(Tenn.)))

**10 For all of the above reasons, I would find all of
plaintiffs' claims, by virtue of equitable tolling, to
have been timely brought.   I therefore dissent.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Case 1:96-cv-00203    Document 206    Filed in TXSD on 05/30/2000    Page 24 of 30

apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

## §541.1   Executive.

The term employee employed in a bona fide executive * * * capacity in section 13(a) (1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not

CSItPDF - www.finebiz.com

Case 1:96-cv-00203   Document 206   Filed in TXSD on 05/30/2000   Page 25 of 30

**§541.5d   Special provisions applicable to employees of public agencies.**

(a) An employee of a public agency who otherwise meets the requirements of §541.118 shall not be disqualified from exemption under §§541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because —

(1) permission for its use has not been sought or has been sought and denied;

(2) accrued leave has been exhausted; or

(3) the employee chooses to use leave without pay.

(b) Deductions from the pay of an employee of a public agency for absences due to a budget-required furlough shall not disqualify the employee from being paid "on a salary basis" except in the workweek in which the furlough occurs and for which the employee's pay is accordingly reduced.

### §541.103 Primary duty.

A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might

nevertheless have management as his primary duty if the other
pertinent factors support such a conclusion. Some of these
pertinent factors are the relative importance of the managerial
duties as compared with other types of duties, the frequency with
which the employee exercises discretionary powers, his relative
freedom from supervision, and the relationship between his salary
and the wages paid other employees for the kind of nonexempt
work performed by the supervisor. For example, in some
departments, or subdivisions of an establishment, an employee has
broad responsibilities similar to those of the owner or manager of
the establishment, but generally spends more than 50 percent of
his time in production or sales work. While engaged in such work
he supervises other employees, directs the work of warehouse and
delivery men, approves advertising, orders merchandise, handles
customer complaints, authorizes payment of bills, or performs
other management duties as the day-to-day operations require. He
will be considered to have management as his primary duty. In the
data processing field an employee who directs the day-to-day
activities of a single group of programmers and who performs the
more complex or responsible jobs in programming will be
considered to have management as his primary duty.

Case 1:96-cv-00203   Document 206   Filed in TXSD on 05/30/2000   Page 28 of 30

§541.118 Salary basis.

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

(1) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

Case 1:96-cv-00203   Document 206   Filed in TXSD on 05/30/2000   Page 29 of 30

(3) Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability. Thus, if the employer's particular plan, policy or practice provides compensation for such absences, deductions for absences of a day or longer because of sickness or disability may be made before an employee has qualified under such plan, policy or practice, and after he has exhausted his leave allowance thereunder. It is not required that the employee be paid any portion of his salary for such days or days for which he receives compensation for leave under such plan, policy or practice. Similarly, if the employer operates under a State sickness and disability insurance law, or a private sickness and disability insurance plan, deductions may be made for absences of a working day or longer if benefits are provided in accordance with the particular law or plan. In the case of an industrial accident, the "salary basis" requirement will be met if the employee is compensated for loss of salary in accordance with the applicable compensation law or the plan adopted by the employer, provided the employer also has some plan, policy or practice of providing compensation for sickness and disability other than that relating to industrial accidents.

(4) Deductions may not be made for absences of an employee caused by jury duty, attendance as a witness, or temporary military leave. The employer may, however, offset any amounts received by an employee as jury or witness fees or military pay for a particular week against the salary due for that particular week without loss of the exemption.

(5) Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status. Safety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines.

(6) The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

(b) Minimum guarantee plus extras. It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. The requirement will be met, for example, by a branch manager who receives a salary of $155 or more a week and in addition, a commission of 1 percent of the branch sales. The requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations. Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount

Case 1:96-cv-00203   Document 206   Filed in TXSD on 05/30/2000   Page 30 of 30

§541.5d   Special provisions applicable to employees of
public agencies.

(a) An employee of a public agency who otherwise meets the
requirements of §541.118 shall not be disqualified from
exemption under §§541.1, 541.2, or 541.3 on the basis that such
employee is paid according to a pay system established by
statute, ordinance, or regulation, or by a policy or practice
established pursuant to principles of public accountability, under
which the employee accrues personal leave and sick leave and
which requires the public agency employee's pay to be reduced
or such employee to be placed on leave without pay for absences
for personal reasons or because of illness or injury of less than
one work-day when accrued leave is not used by an employee
because —

(1) permission for its use has not been sought or has been
sought and denied;

(2) accrued leave has been exhausted; or

(3) the employee chooses to use leave without pay.

(b) Deductions from the pay of an employee of a public
agency for absences due to a budget-required furlough shall not
disqualify the employee from being paid "on a salary basis"
except in the workweek in which the furlough occurs and for
which the employee's pay is accordingly reduced.