Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 1 of 47

224

United States District Court
Southern District of Texas
FILED

JUN 05 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EDWARD ALCALA, et al., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | Civil Action B 96-203 |
| | § | |
| ALEX PEREZ, in his official capacity Sheriff of Cameron County, Texas and Cameron County, Texas, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST LIEUTENANTS' CLAIMS AND BRIEF IN SUPPORT

Alex Perez, in his official capacity as Sheriff of Cameron County, Texas and Cameron County, Texas (collectively, **"Cameron County"**), pursuant to Rule 56 of the Federal Rules of Civil Procedure, file this their Motion for Summary Judgment and Brief in Support as follows:

## I.
## STATUS OF THE CASE

There are six remaining Plaintiffs. Four are lieutenants. This brief addresses the four lieutenants only. They are Rolando Medrano, SSN 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; Hector Cervantes, SSN 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; Abel G. Garcia, SSN 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; and Francisco Gonzalez, SSN 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.

In its prior motion for summary judgment on the executive exemption issue the County lumped together the jail sergeants and jail lieutenants as exempt from the FLSA . This Court in its Report and Recommendation filed on October 16, 2000, found that the tests for executive exemption were meant, except "the duties test". This Court wrote that: "The current record does not enable the

Court to determine, as a matter of law, whether the plaintiffs' 'primary duty' is management." ( Page 11 of the R &R.)

County has since settled with all jail sergeants, but not the jail lieutenants. County believes the record was not clear that jail sergeants were exempt from the FLSA as managers, so County settled with them.

But, County believes that the record is clear that lieutenants are exempt from the FLSA as managers. And, by focusing on the lieutenants only, who manage the sergeants, that this Court will find the record enables it to determine, as a matter of law, that the Plaintiff-lieutenants' primary duty is management.

## II. FACTUAL SUMMARY

This lawsuit involves a claim under the Fair Labor Standards Act ("**FLSA**") for alleged unpaid wages. The Plaintiffs allege that they have not been paid for overtime hours worked. However, as shown below, the Lieutenant-Plaintiffs are exempt from the overtime pay requirements of the FLSA and, therefore, even if they had worked overtime hours, they are not entitled to overtime pay.

**Lieutenants' Managerial Duties**

Cameron County has several detention centers, and the five lieutenants are in charge of the day-to-day operation of the detention facility to which they are assigned. (Abel Garcia depo. At 26; 28; 42-43, attached as Exhibit "A"). Lieutenants are the highest ranking officer stationed at each detention center, and are responsible for overseeing the operation of the facility. Lieutenants supervise sergeants, who are directly responsible for the handling of prisoner issues.

ClibPDF - www.fastio.com

(Abel Garcia depo. At 4-5; 8-9). There is one sergeant assigned to each detention center per shift, and each sergeant is responsible for organizing, planning, scheduling, assigning, and supervising up to ten (10) detention officers. Lieutenants review and approve the schedules set by the sergeants. (Abel Garcia depo. at 42-43). It is the sergeant's responsibility to make sure that the jail is being run in an organized manner and, to this regard, he/she must monitor the jail facility and prisoner activities to prevent disruptive incidents. Sergeants also assign the areas where detention officers work, and are responsible for insuring that adequate detention personnel are on duty at all times. (Abel Garcia depo. at 11; 87-88). If a detention officer requests a day off, the sergeant may approve or disapprove the leave. Also, if there is a complaint or problem during the shift, the sergeant takes care of the issue. (Abel Garcia depo. at 12-13). During the night shifts, sergeants are the highest ranking officer on duty at the jail. (Abel Garcia depo. at 26). Should any emergencies arise during the night shifts, sergeants call lieutenants at home for guidance.

On any given day, each lieutenant may have responsibility over as many as twenty eight (28) employees, including the shift sergeant, shift supervisor, detention officers, booking officers, transportation officers, matrons, laundry personnel, property officer, state certified jailer, cook, runner, and nurses. (Abel Garcia depo. at 44-51; 92). Lieutenants spend very little time on non-managerial duties. Significantly, Lieutenant Garcia testified that he has **never** had to assume the duties of a guard, sergeant, or any other position. (Abel Garcia depo. At 82-83).

Lieutenants spend very little time performing non-supervisory work. Lieutenant Garcia testified that he has escorted prisoners to the bathroom, escorted prisoners to be released to

bailiffs, participated in fire drills, and conducted jail searches. However, Lieutenant Garcia testified that, at most, he may spend two mornings each week escorting up to nine prisoners in the holding cell to the bathroom. **Each escort takes approximately a minute and a half to two minutes** – a total of 18 minutes maximum (Abel Garcia depo. at 88-90).

Lieutenant Garcia also testified that about **six times a year** he would help escort prisoners out of the jail so they can attend court. This task entails escorting the prisoners along with the bailiffs to the second floor and through the tunnel before allowing the bailiffs to take possession of the prisoners. (Abel Garcia depo. at 95-96). This task takes minutes to perform.

Additionally, Lieutenant Garcia testified that he participates in cell searches **once a month**. Lieutenant Garcia is in charge of overseeing the cell searches, and directs the guards where to go. (Abel Garcia depo. at 96-97). Lastly, Lieutenant Garcia complains that his participation in fire drills amounts to non-supervisory work. However, he testified that the drills occur, at most, **two to three times a month**. The fire drills are directed by the sergeant, and no prisoners are allowed to participate. Lieutenants oversee the fire drill and advise the sergeants if something is not done properly. (Garcia depo. at 97-99). Other than these instances, lieutenants spend the rest of the time supervising and managing their assigned detention center. (Abel Garcia depo. at 103-04).

## III.
## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well settled. Rule 56 (c) of the Federal Rules of Civil Procedure requires that a court enter summary judgment, after adequate time for discovery and upon motion, against a party who fails "to establish the existence of an element essential to

that party's case, and as to which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741 (5th Cir. 1995). Indeed, the United States Supreme Court has stated that:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed "to secure the just, speedy, and inexpensive determination of every action."

*Celotex*, 106 S. Ct. at 2555; *See also*, *Overseas Inns, S.A. v. United States*, 911 F.2d 1146, 1148 (5th Cir. 1990) (entry of summary judgment mandatory where evidence is lacking on material issue). Defendant, as the moving party, need only "point to" the absence of a genuine issue of fact regarding any issue on which Plaintiff has the burden of proof. *Celotex*, 106 S. Ct. at 2553. By contrast, Plaintiff, the non-moving party with the burden of proof on the merits, must introduce sufficient evidence to establish the existence of all elements essential to his case. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

There are no material issues of fact concerning exemptions from the overtime wage requirements for lieutenants. Therefore, the Court should grant Defendants' Motion for Summary Judgment.

## IV.
## ARGUMENT AND AUTHORITIES

The Fair Labor Standards Act requires that employees be paid at a rate of time and one-half for hours worked over forty (40) in each work week. However, the FLSA provides a complete exemption from the overtime pay requirements for *bona fide* executive, administrative, and professional employees. 29 U.S.C. § 213(a)(1). Plaintiffs who are

ClibPDF - www.fastio.com

lieutenants are managerial employees with authority over a department or subdivision. Therefore, lieutenants are exempt from the overtime pay and minimum wage requirements of the FLSA.

***Lieutenants Are Exempt Employees.***

The FLSA exempts executive, administrative, and professional employees from the minimum wage and overtime pay requirements. 29 U.S. C § 213(a)(1). The regulations provide both a short test and a long test for determining whether an employee is employed in an executive capacity. See 29 C.F.R. 541.1(f). The short test applies where an employee earns more than $250 per week. See, *Id; Shockley v. City of Newport News,* 997 F.2d 18,25 (4th Cir. 1993). It is undisputed that all lieutenants are paid an amount well in excess of $250 per week. Therefore, the short test applies to the present case.

Under the short test, an employee is an executive employee if the following conditions are met: (1) the employee is compensated on a salary basis; (2) his primary duty consists of managing the enterprise in which he is employed or a customarily recognized department or subdivision thereof; and (3) he regularly directs the work of two or more employees. *See*, 29 C.F.R. 541.1(f); *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1144 (3d Cir. 1983). As shown below, lieutenants meet all conditions of the executive employee test.

**1. The Salary Basis Test.**

Lieutenants are paid on a salary basis. See, this Court's Report And Recommendation filed in this case on October 16, 2000, pages 7 - 10. Specifically, at page 10 this Court states:

ClibPDF - www.fastio.com

"Accordingly, the Court finds that Plaintiffs qualify as salaried employees. This issue, therefore, will not be reargued here.

**2. The Primary Duty Test.**

The evidence shows that lieutenants are primarily responsible for managing the detention center to which they are assigned. Therefore, as shown below, lieutenants meet the second element of the executive employee test (i.e., their primary duty consists of managing the enterprise or a customarily recognized department or subdivision thereof). See, 29 C.F.R. 541.1(f). Duties required of an "executive" include: setting and adjusting hours of work; directing, supervising and appraising employees; handling employee complaints and grievances; disciplining employees; planning and apportioning work among employees; and providing for the safety of the men and the property. 29 C.F.R. § 541.102(b). An employee's primary duty is management if he devotes a majority (over 50%) of his time to such duties[1]. 29 C.F.R. § 541.103.

Lieutenant Abel Garcia's testimony clearly shows that lieutenants qualify as executive employees because they manage the detention facility to which they are assigned. Lieutenants are the highest ranking officer stationed at each detention facility, and are responsible for overseeing its day-to-day operation. Lieutenants manage their detention facility by directly supervising the shift sergeant, who is directly responsible for the handling of prisoner issues. Under the

---

[1] An employee may still be an exempt executive even if he spends less time on management matters. Such an employee's status depends on whether his managerial duties are more important than his other duties, how frequently he exercises discretionary powers, and how free he is from supervision. 29 C.F.R. § 541.103.

supervision of lieutenants, sergeants are responsible for organizing, planning, scheduling, assigning, and supervising up to ten (10) detention officers. Lieutenants review and approve the schedules set by the sergeants. In addition to the sergeant and detention officers, there are a number of other employees working at the detention center; all of these employees are under the supervision of the lieutenants. In fact, on any given day, each lieutenant may have responsibility over as many as twenty eight (28) employees.

Lieutenant Garcia's deposition testimony further reveals that lieutenants spend very little time on non-managerial duties. Indeed, Lieutenant Garcia testified that he has **never** had to assume the duties of a guard, sergeant, or any other position. (Garcia depo. At 82-83). Lieutenant Garcia's testimony also shows that his performance of non-supervisory duties includes the following:

- Escorting prisoners to the bathroom;
- Escorting prisoners to be released to bailiffs;
- Participating in fire drills; and
- Conducting jail searches.

Significantly, to the extent that lieutenants perform any of the foregoing non-supervisory tasks, it takes up very little of their time. Certainly, there is no evidence that these non-supervisory tasks take up more than 50% of their time.

Escorting prisoners to the bathroom takes, at most, two mornings each week. **Each escort takes approximately a minute and a half to two minutes** – a total of 18 minutes maximum. There are only about **six times a year** a lieutenant would help escort prisoners out of

ClibPDF - www.fastio.com

the jail so they can attend court. This rather simple and quick task involves escorting the prisoners along with the bailiffs to the second floor and through the tunnel before allowing the bailiffs to take possession of the prisoners.

Lieutenants participate in jail searches **once a month**. In these instances, lieutenants are in charge of overseeing the cell searches, and direct the guards where to go. Lastly, participation in fire drills do not occur but **two to three times a month at most**. The fire drills are directed by the sergeant, and no prisoners are allowed to participate. Lieutenants oversee the fire drill and advise the Sergeant if something is not done properly. Other than these instances, lieutenants spend the rest of their time supervising. Based on the foregoing evidence, it is abundantly clear that lieutenants spend well over fifty percent of their time managing the detention centers.

**3. Lieutenants Supervise the Work of Two or More Employees.**

Finally, lieutenants meet the third element of the executive employee test because they supervise at least two other employees. It is undisputed that lieutenants supervise all employees working at the detention facility. In fact, on any given day, lieutenants may have responsibility over as many as twenty eight (28) employees, including the shift sergeant, shift supervisor, detention officers, booking officers, transportation officers, matrons, laundry personnel, property officer, state certified jailer, cook, runner, and nurses.

Since there is no fact issue regarding the lieutenants' managerial responsibilities over the detention facilities, no fact issue regarding the lieutenants' salary, and no fact issue regarding the lieutenants' supervisory authority over at least two other employees, it is clear that lieutenants are executive employees under the FLSA. Therefore, lieutenants are not entitled to overtime pay.

ClibPDF - www.fastio.com

## V.
## CONCLUSION

The Court should dismiss claims for overtime pay by lieutenants because they qualify as managerial employees with authority over a department or subdivision. Specifically, lieutenants are paid a salary in excess of $250 per week, are responsible for managing the detention facility to which they are assigned, and are responsible for supervising at least two other employees. Having met all the requisite elements of the executive employee exemption, lieutenants are not entitled to overtime pay under the FLSA.

## VI.
## REQUEST FOR RELIEF

For the foregoing reasons, Alex Perez, in his official capacity as Sheriff of Cameron County, Texas and Cameron County, Texas respectfully request that the Court grant their Motion for Summary Judgment on all existing claims by Plaintiffs who are lieutenants, that the Court award Defendants their costs, and that Defendants be given all other relief to which they are justly entitled.

ClibPDF - www.fastio.com

Respectfully,

For Cameron County
Cameron County Civil Legal Department
964 East Harrison Street
Brownsville, Texas 78578
(956) 550-1448
(956) 544-0801 (Facsimile)

BY: ______________________________

Richard O. Burst
Attorney in Charge
Texas State Bar #00785586
S.D. No. 15515

Dylbia L. Jefferies
Of Counsel
Texas State Bar #00786516
S.D. No. 17065

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been sent to counsel for Plaintiff:

Mr.George Powell
612 Nolana, Suite 410
McAllen, Texas 78504

by placing a copy of the same, properly wrapped and addressed, in the United States mail, first class, postage prepaid, certified, return receipt requested, this 6 day of June, 2001

______________________________
Richard O. Burst

ClibPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EDWARD ALCALA, et.al., Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION NUMBER B-96-203 |
| ALEX PEREZ, in his official capacity as Sheriff of Cameron County, Texas, and CAMERON COUNTY, TEXAS, Defendant. | ) | JURY DEMAND |

DECLARATION UNDER PENALTY OF PERJURY

STATE OF TEXAS )
COUNTY OF CAMERON )

"I declare under penalty of perjury under the laws of the United States of America that the attached are true and correct copies of Pages 4, 5, 8, 9, 11, 12, 13, 26, 28, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 82, 83, 87, 88, 89, 90, 92, 95, 96, 97, 98, 99, 103, and 104 of the Abel Garcia Deposition taken in this case on March 1, 2000."

"I declare under penalty of perjury that the foregoing is true and correct."

Executed on June 6, 2001.

Richard O. Burst
Attorney in Charge
For Cameron County

ClibPDF - www.fastio.com

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 13 of 47

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EDWARD ALCALA, et.al., Plaintiffs )
)
)
v. ) CIVIL ACTION NO. B-96-203
)
ALEX PEREZ, in his official capacity as Sheriff of Cameron County, Texas, and CAMERON COUNTY, TEXAS, Defendant ) JURY DEMAND

---

ORAL DEPOSITION OF
ABEL GARCIA
MARCH 1, 2000

---

ORAL DEPOSITION OF ABEL GARCIA, produced as a witness at the instance of the DEFENDANT, taken in the above styled and numbered cause on MARCH 1, 2000, reported by DONNA SHEARMIRE, Certified Court Reporter No. 6625, in and for the State of Texas, at the offices of Bryant & Stingley, Inc., 2010 East Harrison, Harlingen, Texas, pursuant to the Federal Rules of Civil Procedure.

ClibPDF - www.fastio.com

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 14 of 47

## APPEARANCES

COUNSEL FOR PLAINTIFFS:

GEORGE P. POWELL
HINOJOSA & POWELL, P.C.
612 Nolana, Suite 410
McAllen, Texas 78504

COUNSEL FOR DEFENDANT:

RICHARD O. BURST
CAMERON COUNTY CIVIL LEGAL DEPARTMENT
964 East Harrison Street
Brownsville, Texas 78578

ALSO PRESENT:

Ronald Saenz
Luis Esparza

## INDEX

| | PAGE |
|---|---|
| Appearances | 2 |
| ABEL GARCIA | |
| Examination by Mr. Burst | 3 |
| Examination by Mr. Powell | 53 |
| Examination by Mr. Burst | 64 |
| Examination by Mr. Powell | 104 |
| Errata Sheet/Signature Page | 105 |
| Reporter's Certificate | 107 |

Attached to the end of the transcript: Stipulations

## EXHIBITS

| NUMBER | DESCRIPTION | PAGE IDEN. |
|---|---|---|
| 1 | Job Description | 29 |

ClibPDF - www.fastio.com

14:16 A. No, it never got to that.

14:16 Q. Okay. Did -- have you ever been a plaintiff or defendant in a lawsuit before?

14:16 A. No, sir.

14:16 Q. Okay. Do you understand when you give a deposition right now this could be read to the jury under certain circumstances? It's just like you're sitting in front of a judge or a jury right now. Do you understand that?

14:16 A. Yes, sir.

14:16 Q. You understand that your answers are, therefore, very important?

14:16 A. Yes, sir.

14:16 Q. And you do have to say -- you've got to acknowledge verbally whenever I ask a question so she can take it down. Okay?

14:16 A. Yes, sir.

14:16 Q. About the only other thing I want to say introductory is, if you do not understand my question, would you let me know? Just simply say, "I don't understand your question." Okay?

14:16 A. Yes, sir.

14:17 Q. All right. When you first were hired with the sheriff's office, what position did you have?

14:17 A. I started as a detention officer, a jailer.

14:17 Q. Okay. And how long were you a jailer?
14:17 A. Approximately about five years.
14:17 Q. Do you know when -- where were you transferred to after that?
14:17 A. It was in the same facility. From a jailer, I went -- I was promoted to what we call assistant supervisor.
14:17 Q. Okay. So in approximately five years, you went to assistant supervisor?
14:17 A. Yes, sir.
14:17 Q. Okay. As assistant supervisor, what were your duties?
14:17 A. Basically, it was totally interaction with the inmates.
14:18 Q. It was what?
14:18 A. It involved being involved totally with inmates -- escorting to and from their cell areas in preparation for courts, hospitals, if necessary, doctor appointments, from cells to infirmary, getting them ready for court, getting them dressed for the dailies.
14:18 Q. Okay. Is that what the jailer is to do?
14:18 A. The jailers?
14:18 Q. Yes.
14:18 A. Yes, sir.
14:18 Q. So when you were promoted, you were doing the

ClibPDF - www.fastio.com

14:21 Q. Has the number of individuals assigned to a shift in the jail increased or stayed the same during the 21 years you've been there?

14:21 Do you understand my question? What I'm saying, the number -- I mean if you get -- let me ask it this way: How many people are assigned where you work now mostly?

14:21 A. Well, we are rotated, but right now, I'm assigned to the main jail, the Cameron County jail.

14:21 Q. Okay. You're a lieutenant now, correct?

14:21 A. Yes, sir.

14:21 Q. And you're over the whole jail?

14:21 A. I do what?

14:21 Q. You're over the whole main jail --

14:21 A. Yes, sir.

14:21 Q. -- when you're own duty?

14:22 A. Right.

14:22 Q. Okay. How many detention officers are assigned -- and when I say detention officers and/or sergeants are assigned to each shift?

14:22 A. There are eleven officers including the sergeant.

14:22 Q. Okay. So each shift has an identifiable group of people, and that would be eleven people?

14:22 A. Yes, sir.

ClibPDF - www.fastio.com

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 18 of 47

14:22 Q. Okay. And among those eleven people, there would be a sergeant. He's the supervisor. That's now, right?

14:22 A. Right.

14:22 Q. And an assistant supervisor?

14:22 A. Yes, sir.

14:22 Q. But as far as you understand, he's no different in terms of pay than a jailer -- than a regular detention officer?

14:22 A. You're talking about the assistant supervisor?

Q. Yes, sir.

A. Yes, sir.

14:22 Q. Okay. So it would be the same pay -- same pay basically, as far as you understand, as the detention officer and the assistant supervisor?

14:23 A. Yes, sir.

14:23 Q. Does assistant supervisor still, as when you were assistant supervisor, take over when the supervisor is not present?

14:23 A. Can you repeat that question?

14:23 Q. Certainly, I can. When the supervisor, not right now, just as we speak in 2000 -- if the supervisor is missing from one of your shifts, okay, the sergeant, does the assistant supervisor take over his duties?

ClibPDF - www.fastio.com

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 19 of 47

A. When you say "supervisor," you're talking about when I was the assistant supervisor or the sergeant or the rank that I hold right now?

Q. I'm talking about when you were supervisor on shift, which is a rank that's now a sergeant. When you were in that position, did you assign duties to the people under you?

A. The only thing that -- as a sergeant, you would assign the areas where the officers would be working at.

Q. Well, that's what I mean. They come on duty, and you would tell them which area they work -- okay. Let's go further than that. Like, where you are right now, how many different areas are there for a detention officer to work?

A. How many areas?

Q. Yes.

A. Well, you have both floors, and so they're assigned there. You also have the infirmary where you have an officer assigned there. And then you have the booking area where you assign people to work there also.

Q. And that would be the sergeant that makes those assignments?

A. Yes, sir.

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 20 of 47

14:26 Q. Okay. If someone wants to have a day off, is the sergeant or -- let's just make it easy. Let's call the position of supervisor sergeant, let's just call it sergeant. Okay? Is that okay with you?

14:26 A. Yes, sir.

14:26 Q. Okay. Does the sergeant -- does he make -- if someone says, "I can't be here," or let's say, "I want to have next week off," is the sergeant the one that initially approves that or disapproves that?

14:27 A. Yes, sir. He would be the one that would authorize the time off that the officer was requesting.

14:27 Q. Okay. And if there was -- and he would be the one who would have to make sure that he's got enough people there to cover all the different areas; is that correct?

14:27 A. Yes, sir.

14:27 Q. That is, the sergeant would have to do that?

14:27 A. Yes, sir.

14:27 Q. Okay. If the -- if there's a problem, let's say a complaint or a problem developed during the shift, does the detention officer take that to the sergeant?

14:27 A. The detention officer, if the problem was in his area, he would immediately use the means of communication that we have there and request the

ClibPDF - www.fastio.com

presence of the sergeant, and the sergeant would respond to the problem area and would initiate whatever action was necessary to resolve the problem.

Q. Okay. Then if the sergeant can't solve it, would he come to what position you now have as lieutenant?

A. Yes, sir.

Q. If a person during the shift -- a detention officer -- regular detention officer -- and I use that term, so we understand each other, to mean the lowest rank in file working person in the jail. Okay? That's the jailer. Do we understand each other?

A. Yes, sir.

Q. Okay. If a detention officer were to commit some act that would be a violation of policy -- of jail policy, would the sergeant be in a position to discipline?

A. No, sir.

Q. What would he do?

A. The sergeant would -- if the sergeant is aware as to what had just occurred, the sergeant would initiate an incident report, as we call it.

Q. Okay.

A. And we contact a lieutenant.

Q. Would the sergeant be in a position to make a

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 22 of 47

14:44 lieutenant?

14:44 A. Yes, sir.

14:44 Q. And does he outrank the other lieutenants?

14:45 A. Yes, sir, he does.

14:45 Q. Is he a supervisor that's over all the jails?

14:45 A. His assignment is to overview the lieutenants

14:45 and the facilities.

14:45 Q. Okay. And you're a lieutenant in charge of the

14:45 main jail on a given day right now?

14:45 A. Yes, sir.

14:45 Q. All right. And there would be -- will there be

14:45 one lieutenant on each shift or just the day shift?

14:45 A. Just the day shift.

14:45 Q. Okay. In the evenings, the sergeant would be

14:45 the ranking person there?

14:45 A. For the shifts?

14:45 Q. Yes.

14:45 A. Yes, sir.

14:45 Q. Would there be anybody -- is there anybody more

14:45 ranking than a sergeant in the main jail, say, after

14:45 5:00 of an evening?

14:45 A. Physically there, no, sir.

14:45 Q. Okay. What do you mean by -- you hesitated.

14:45 A. Because if the sergeant would have a problem,

14:46 then he would call the lieutenant at his residence on

ClibPDF - www.fastio.com

14:47 MR. POWELL: Let's take a quick break.

(Brief recess)

14:50 Q. Okay. You understand you're still under oath?

14:50 A. Yes, sir.

14:51 Q. I lost my train of thought except -- going to the organization of the jail, your -- so as I understand it, the only time, on a normal situation, there will be a lieutenant there during the day shift only?

14:51 A. Yes, sir.

14:51 Q. And will there be a lieutenant at each jail?

14:51 A. Yes, sir.

14:51 Q. Detention center one?

14:51 A. Yes, sir.

14:51 Q. Two?

14:51 A. Yes, sir.

14:51 Q. And the main jail?

14:51 A. Yes, sir.

14:51 Q. Okay. Is George Garcia one of those lieutenants?

14:51 A. Yes, sir.

14:51 Q. So basically, he and you are of equal rank; is that correct?

14:51 A. Yes, sir.

14:51 Q. All right. Is there a shift lieutenant there

ClibPDF - www.fastio.com

A. Yes, sir, I was.

Q. There was a period of time after you were made supervisor you became a sergeant?

A. Right.

Q. I guess that's when they created the rank of sergeant?

A. Exactly.

Q. When you were a sergeant, were your duties similar to or the same as what you've described to me as the sergeants working for you?

A. Yes, sir.

Q. Do you, as a lieutenant, during the course of the day, do you monitor the facilities to see what's going on?

A. Yes, sir.

Q. Do you have any monitoring devices available to you, like TVs or anything like that?

A. The monitoring devices are situated in the booking area.

Q. That you have access to?

A. Yes, sir.

Q. Okay. Do you approve of the schedules that the sergeants lay out, or do you review them?

A. Do I approve of them?

Q. Yes.

ClibPDF - www.fastio.com

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 25 of 47

15:15 A. Yes.

15:15 Q. What I mean by that is, do you look at them and approve them, sign off on them?

15:15 A. We don't sign off on them.

15:15 Q. You just review them?

15:15 A. Yes, sir.

15:16 Q. In terms of day-to-day operations of the main jail, while you're there, do you control that in the main jail?

15:16 A. Control?

15:16 Q. Do you oversee it?

15:16 A. Yes, sir.

15:16 Q. Okay. In addition -- okay. A while ago, the main jail, you said there were eleven people on a shift. Would that be, you know, assigned to the shift?

15:17 I don't mean there every day, but if there's a full number of people assigned to a shift -- and I take it there would be nine jailers, one assistant shift supervisor, and one sergeant. Would that be correct?

15:17 A. Yes, sir.

15:17 Q. In addition to that, do you have other staff people? I believe you said a while ago you had a booking officer that was under you; is that right? Booking officer --

A. No, sir. The booking officers that -- the immediate supervisor for the booking officer is somebody else, sir.

Q. Okay. What other -- are there other staff in the main jail while you're there that you oversee?

A. Yes. The booking officers, the laundry personnel, the cooks, the infirmary officers.

Q. These -- so the cook answers directly to you?

A. Well, they have their immediate supervisor.

Q. Okay.

A. But because of the fact that they're within the perimeters of the jail, and we oversee the jail, so we do monitor them and review them and check on them, this and that.

Q. Okay. If the jail -- if the cook supervisor had a problem he couldn't handle, would he come to you?

A. Yes, sir.

Q. Now, the booking officer -- you kind of confused me there. You said there is a booking -- a person in charge of booking officers, but then you also said you oversee them just now, if I understood you?

A. Yeah. I'm talking about their immediate supervisor. In this case, the immediate supervisor for the booking officers is Corporal Mario Vela.

Q. What rank is he?

ClibPDF - www.fastio.com

15:19 A. He's a corporal.
15:19 Q. But then he's under you, or you oversee him while you're there?
15:19 A. Yes.
15:19 Q. Okay. I got it. So it is no different than a shift sergeant except he's a corporal?
15:19 A. Exactly.
15:19 Q. How many people does he have working under him?
15:19 A. Well, you have six booking officers, two on each shift. And then he's got probably another three officers working in classification. So I would say between eight and nine officers.
15:19 Q. On a given shift, the people you oversee, if everybody is -- I'm talking assigned and not necessarily present. Okay?
15:19 There would be eleven people on shift. That would be jailers, okay, sergeant, assistant sergeant, jailers, be two booking officers; is that correct?
15:20 A. Come back to the officers.
15:20 Q. Booking officers.
15:20 A. There are 11 jailers.
15:20 Q. Okay.
15:20 A. That includes the assistant and the sergeant.
15:20 Q. Got you.

A. Okay? But the sergeant will not have 11 officers there at any given time.

Q. I understand that, but my question is based on the people, based not on who's present, but if you had a full -- if you had a full shift. Now, I understand that at a given time there might be someone on vacation, someone sick.

A. Right.

Q. But for the purpose of this question, just assume that you -- I'm just talking about number of slots, okay, not warm bodies that are filling them at a given time, but number of slots. There would be eleven slots for the jail?

A. Right.

Q. Which would be detention officers, be nine detention officers, be an assistant shift supervisor and a sergeant.

A. Right, yes, sir.

Q. So that's eleven people?

A. And then as I understand you to say, there would be two in the booking.

A. Yes, sir.

Q. So now we are at 13. How many cooks?

A. There is one cook working a particular shift, and then the other one comes in overlapping the one

15:21 that was there.

15:21 It would -- they would probably overlap for 30, 40 minutes, and than that cook that was there first leaves and the other one stays.

15:21 Q. You've got one cook to cook for that many prisoners?

15:21 A. Well, I'm talking about one facility. Each facility has a cook.

15:21 Q. Oh, okay. So you have a kitchen in each facility?

15:21 A. Yes, sir.

15:21 Q. All right. So there's one cook for 14 people. All right. Is there anybody else in the facility during the day that you oversee?

15:22 A. There's the property officer.

15:22 Q. Okay. You're getting beyond my memory. I have to write it down.

15:22 Q. All right. Who else?

15:22 A. We mentioned the detention officers. We mentioned the cooks, the laundry officers.

15:22 Q. How many are in laundry?

15:22 A. There are three.

15:22 Q. During the day?

15:22 A. Yes, sir.

15:23 Q. Okay.

ClibPDF - www.fastio.com

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 30 of 47

15:23 A. And the property officer is one.

15:23 Q. Okay. Got one property officer. All right. Is there a thing called the commissary officer?

15:23 A. Yes, sir. But that is located at the other facility, over at detention number one.

15:23 Q. Okay. What about the female facility? Do you oversee it?

15:23 A. Yes, sir.

15:23 Q. And so --

A. Women's ward.

Q. Excuse me?

15:23 A. They call it the women's ward.

15:23 Q. Women's ward. Okay. Now, are any of these people we're talking about here in the women's ward?

15:23 A. No, sir.

15:23 Q. Okay. Well, who's in the women's ward then? How many during the day -- if everybody -- I mean slots, not people, the number of slots?

15:23 A. You mean officers?

15:23 Q. I mean number of people who you oversee.

15:23 A. Well, during the daytime, there is the sergeant and a matron, another officer.

15:23 Q. Sergeant and one matron, so two?

15:23 A. Yes, sir.

15:24 Q. Are there any other -- other than what we

ClibPDF - www.fastio.com

discussed here -- you're talking about two bookings, one cook, one property officer, eleven jail guards, three laundry, two sergeants, or one sergeant and one matron, two in the women's ward. Is there anybody else that you oversee during the day?

A. The records officers.

Q. How many?

A. There's -- I believe, there's two officers there.

Q. Would they be called clerks or officers?

A. They're officers. I believe one is a clerk and the other one is a state certified officer.

Q. What's their rank?

A. He's just a detention officer.

Q. Okay. What about in the infirmary? Is there anybody in the infirmary that's under you?

A. Yes. Because of the fact that they are within the jail areas, and I do -- my responsibility is to oversee the whole facility, so yes, although they do have their immediate supervisors.

Q. Okay. How many are in there?

A. Probably one nurse and two clerks. And, again, they rotate to different facilities, so sometimes you might have during the daytime, maybe, two nurses, for example.

ClibPDF - www.fastio.com

Q. Okay. Are these two -- the people in the infirmary you're talking about, are they actually right now assigned to the health department?

A. Yes, sir.

Q. They are actually physically located in the jail, though, when they're in the infirmary, in the main jail?

A. Yes, sir.

Q. If there were a problem develop in the infirmary with the inmates, would you be involved with that problem?

A. Definitely.

Q. And you would attempt to resolve it; is that correct?

A. Yes, sir.

Q. And if you could not, who would you report to?

A. We would follow the chain of command -- first lieutenant and from there the captain and so forth.

Q. Okay. Can you think of anybody else that we have missed here that you oversee?

A. We have the transportation officers also. There's two transportation officers.

Q. What are their duties?

A. They transfer prisoners from one cell to another. They handle outside doctor appointments.

These are appointments that are scheduled for outside doctors, so we take them.

Q. So if an inmate had a doctor's appointment, it would be up to you to make sure that they get there?

A. Yes, sir.

Q. And you would direct one of the transportation officers to do so?

A. Yes, sir.

Q. Okay. Anybody else?

A. We have an officer in our office that we oversee him also.

Q. What is he?

A. He's a state certified jailer, but basically, he does administrative work.

Q. Okay. And he's assigned to the lieutenant's office?

A. Yes, sir.

Q. What would be his duties?

A. Recordkeeping, insure that they're filed properly for inspection by the Texas Commission of Jail Standards.

Q. What kind of records?

A. The activity logs of the officers, the sergeants, the standardized forms that are filled out for inspection of anything from electrical to plumbing

16:23 A. Yes, sir.

16:24 Q. When you are working -- do you ever work, say, as a guard on the second floor?

16:24 A. As a guard?

16:24 Q. Yes. Yes or no?

16:24 A. No, sir.

16:24 Q. When's the last time you've been a guard on the second floor?

16:24 A. Many years ago. Before I was a supervisor.

16:24 Q. What about the third floor?

16:24 A. The same -- same thing.

16:24 Q. Do you ever work -- right now as a lieutenant, do you ever have to work as a guard on the first floor -- the second floor?

16:24 A. No, sir.

16:24 Q. The third floor?

16:24 A. As a guard, you mean, assigned to the second floor?

16:24 Q. Yeah. Because you're short.

16:24 A. No, sir.

16:24 Q. You understand what I'm saying?

16:24 A. Yes, sir.

16:24 Q. You're short of personnel. Do you have to work as a guard?

16:24 A. No, sir.

ClibPDF - www.fastio.com

Q. If your sergeant is gone, then the shift assistant sergeant takes his position; is that correct?

A. Yes, sir.

Q. So you don't have to work as the sergeant?

A. No, sir.

Q. When you receive a list of names to transfer -- of people to transfer, what do you physically do?

A. We assist the sergeant or the assistant to escort the prisoners downstairs and get them dressed up in-house, in the holding areas or the drunk tank until they're picked up.

Q. If you've got seven people there, do you have to assist to do that?

A. Yes, sir.

Q. How many people does it take?

A. To escort prisoners?

Q. Yes.

A. Two, even three officers.

Q. Well, two or three, which is it?

A. Two and sometimes three.

Q. Why would you need three?

A. Because sometimes one of those officers might be sent somewhere else. A vendor comes in during that period of time and they have to go back there and assist with that.

16:30 other details, you know, out of the area of the holding cell in the booking area.

16:30 Q. You're the supervisor, aren't you?

16:30 A. Yes, sir.

16:30 Q. So can't you simply go to your desk and tell the shift sergeant there's someone here that has got to go to the bathroom?

16:30 A. Sometimes there is nobody there.

16:30 Q. You got --

16:30 A. So this prisoner is telling me, "I just got to," you see.

16:31 Q. Okay. Let's recap what your testimony -- your testimony is that one day a week you might be down to six people. Okay?

16:31 A. Yes, sir.

16:31 Q. So most of the week, you've got the full complement of people there, and that's what schedule -- they're scheduled to do, isn't it, take people out of the holding tank, among other things?

16:31 A. Yes, sir. But they are not in that area all the time. They're always moving around doing this or that or they might be upstairs on the floors just going on rounds.

16:31 Q. Well, the shift sergeant's job is to make sure that the place is being run in an organized manner; is

ClibPDF - www.fastio.com

16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:31 16:32 16:32 16:32 16:32 16:32 16:32 16:32 16:32 16:32 16:32

that correct?

A. Yes, sir.

Q. And your job is to oversee that?

A. Yes, sir.

Q. So if people are going all over the place, then you or your sergeant, neither one, are doing their job, are they?

A. Yes, sir.

Q. You are? You think you are?

A. Yes, sir.

Q. You've got the number of people that are supposed to be there and you've got to escort a prisoner to go take a leak?

A. Yes, sir.

Q. And you think you're doing your job?

A. Yes, sir, I am.

Q. So how many prisoners in a day do you escort to take a leak?

A. Probably that time and maybe another time during the day.

Q. Twice a day?

A. If necessary. Not twice a day. Maybe only that morning.

Q. How long does it take for them to take a leak?

A. Each prisoner?

ClibPDF - www.fastio.com

16:32 Q. Yes.
16:32 A. Probably a minute and a half, two minutes.
16:32 Q. And that's only out of the holding cell, right?
16:32 A. Yes, sir.
16:32 Q. Because the rest of the cells have a bathroom; isn't that correct?
16:32 A. The drunk tank, yes, sir. The holding cells don't have one.
16:33 Q. Well, how many holding cells are there?
16:33 A. We have two holding cells.
16:33 Q. Okay. So we are only talking about the prisoners that are in the holding cell?
16:33 A. Yes, sir.
16:33 Q. So how many in the morning do you take to take a leak?
16:33 A. Probably seven or eight or nine.
16:33 Q. You take seven or eight or nine people every morning to take a leak?
16:33 A. Not every morning, sir.
16:33 Q. Well, let's talk about how many times a week do you take seven or eight or nine out of the holding cell?
16:33 A. How many times a week do I take seven or eight or nine?
16:33 Q. Yeah. Out of the holding cell.

16:33 A. Not one time. Not during -- not every week.

16:33 Q. So maybe every other week?

16:33 A. One morning I might come in and maybe two might want to go. The next morning I come in and maybe four or five might want to go. You know, it depends.

16:33 Q. It takes about a minute or minute and a half per person?

16:33 A. About, yes, sir. Two minutes maybe three minutes. The commode area is probably about 50 or 60 feet away.

16:34 Q. You do that every morning?

16:34 A. Not every morning, sir.

16:34 Q. Okay. How many mornings a week do you do that?

16:34 A. I couldn't tell you how many mornings.

16:34 Q. Two?

16:34 A. In a week's time?

16:34 Q. Yes, sir.

16:34 A. Probably two.

16:34 Q. Okay. No more than two?

16:34 A. No, sir, no more than two.

16:34 Q. Responding to emergencies, as a person in charge of a facility, that's a duty you would be assigned to do; is it not?

16:34 A. Yes, sir.

16:34 Q. As a supervisor in a facility, you would be

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 40 of 47

16:36 people. If everyone is there, and I understand they are not always going to be there. So let's just say there's 18 of the 25 present.

16:36 A. 25?

16:36 Q. Well, you have one -- all the people -- in fact, there's more than that if you count the nurse in the deal. There's 28. You gave me a list of 28 people that you oversee during a given day, if they're all there.

16:36 A. Yes, sir.

16:36 Q. That's slots. But I already understand that just because they are slotted doesn't mean they are there. Going to be fewer than that present at any given day.

16:36 A. Yes, sir.

16:36 Q. But as you go around, while you're overseeing that 15, 16, 17, 18 people or however many are there, you're observing whether they are doing their job; are you not?

16:37 A. Yes, sir.

16:37 Q. When you're helping them do something, you're telling them how to do it; are you not?

16:37 A. If I see that something is obviously being done wrong, yes, sir.

16:37 Q. Okay. That's your job; is it not?

ClibPDF - www.fastio.com

16:40 A. That will probably be it then.

16:40 Q. Okay. So the rest of the time, there are other subordinates working while you're there?

16:40 A. Yes, sir.

16:40 Q. And you're observing them?

16:40 A. Yes, sir.

16:40 Q. And you're directing them if they are not doing it the way it should be done?

16:40 A. Yes, sir.

16:40 Q. Do you ever escort prisoners with the bailiffs?

16:40 A. I have assisted them. On the second floor, there is a tunnel that allows you access to the courthouse.

16:41 Q. Yes.

16:41 A. And I have assisted them up to and the doors of the last door to the tunnel. And they have the keys to go upstairs. Sometimes the other bailiffs will meet them there at the door.

16:41 Q. Okay.

16:41 A. And he will --

16:41 Q. When you say you have assisted them, tell me what you're talking about.

16:41 A. Basically, just escorting the prisoners along with the bailiff to the second floor and through the tunnel. And then they'll take it from there.

ClibPDF - www.fastio.com

16:41 Q. How many -- you say, "I have done that." How many times have you done that in the past year?

16:41 A. In the past year, probably four maybe five times, six times.

16:41 Q. Okay. Six at the most?

16:41 A. Yes, sir.

16:42 Q. What else do you do during a given day that the regular jailer does that I haven't covered here?

16:42 A. That we haven't covered? Because I answered some of Mr. Powell's questions that --

16:42 Q. No. That I haven't covered right here.

16:42 A. I participate and assist in cell searches, fire drills.

16:42 Q. Okay. Take cell searches. That's required once a month or something like that?

16:42 A. Yes, sir, once a month.

16:42 Q. And I suppose there are others that are taking place; is that correct?

16:43 A. There are what, sir?

16:43 Q. Other cell searches that would be -- do you do it more than once a month?

16:43 A. Oh, yes, sir. Yes, sir.

16:43 Q. When you do a cell search, are all the guards that are there present doing it?

16:43 A. Yes, sir.

ClibPDF - www.fastio.com

Case 1:96-cv-00203 Document 224 Filed in TXSD on 06/05/2001 Page 43 of 47

16:43 Q. Who's in charge?
16:43 A. If -- I am in charge.
16:43 Q. Okay. And so are you telling who to go where?
16:43 A. Yes, sir.
16:43 Q. If there's a problem in the cell search, do you make the decision with how to handle that problem?
16:43 A. Yes, sir.
16:43 Q. Are you overseeing that jail search?
16:43 A. Yes, sir.
16:43 Q. And that's part of your job as a supervisor?
16:43 A. Yes, sir.
16:43 Q. Okay. You named something else. I'm sorry, I interrupted a while ago. What else was it?
16:43 A. Fire drills.
16:43 Q. Fire drills. When you have a fire drill -- how often do you have fire drills?
16:44 A. We do it because of the fact that we have officers that are off. We probably do fire drills anywhere from two to three times a month.
16:44 Q. Okay. When you have a fire drill, is it safe to say that everybody in the building participates?
16:44 A. No, sir.
16:44 Q. Who doesn't?
16:44 A. The laundry people, the cooks, the infirmary officer, the booking officers, the records department

ClibPDF - www.fastio.com

people, the classification officers.

Q. Let me cut you short and ask you this: The people that participate then, they are the direct jail guard staff?

A. Yes, sir.

Q. Okay. So those that -- when you have a fire drill, do you actually vacate any prisoners? You understand my question?

A. If it's a simulated fire drill, no, sir, we don't.

Q. Are there fire drills where you actually take the prisoners out?

A. Yes, sir. Not recently, but yes, there's been -- years back when they used to smoke in there, we used to, and they would start fires. We would --

Q. Well, that would be the real thing then. That would not be a drill; is that correct?

A. No, sir. That would be the real thing.

Q. All right. So we're talking about fire drills here. You don't vacate the prisoners during a fire drill?

A. In a simulated fire drill, no, sir, we don't.

Q. So when you have a fire drill when you've got the whole staff involved that are directly involved, who's in charge?

A. I am, if I'm there.

Q. Well, obviously, if you're not there, you can't. But I am talking about when you're there, who's in charge?

A. I am.

Q. And who is the one that is directing it?

A. The sergeant.

Q. Okay. Are you directing the sergeant?

A. Yes, sir.

Q. If the sergeant does something wrong, will you let him do it or will you correct it?

A. I will correct him, sir.

Q. Okay. Are you there to oversee that fire drill?

A. Yes, sir.

Q. That's your job as a supervisor; is that correct?

A. Yes, sir.

Q. Okay. Fire drills, cell searches. What else?

A. Riots.

Q. Well, okay. Let's -- you have a riot -- how often do you have a riot? Let me just withdraw that question. What do you define as a riot?

A. This is a -- a disturbance caused by prisoners in a cell block or cell block areas that causes damage

ClibPDF - www.fastio.com

A. Yes, sir.
Q. Taking people to take a leak?
A. Yes, sir. The emergencies. You asked that one too.
Q. The emergencies, yeah -- the emergencies that we talked about -- are those within the 50 to 60 percent?
A. Emergencies --
Q. Yeah. What we discussed. When you have to respond to an emergency situation?
A. No, sir. Those are times when I'm at home, for example, and they call me.
Q. I didn't talk about that with you. Emergencies when you -- I'm talking about when you have to respond to -- I think we were discussing the list of things that I said that you do -- you do with other officers. And you said you got to go --
A. Oh, yes, sir. It's while I'm doing my duties.
Q. Yeah.
A. Yes, sir.
Q. Is that part of the 50 or 60 percent?
A. Yes, sir.
Q. Well, if I'm right, in each of those things except taking people to take a leak and the five times a year that you -- or six times at most a year that you

17:00 take people up to open the door to the tunnel to let the bailiffs out, you're acting in a supervisory capacity. Wasn't that your testimony?

17:00 A. Yes, sir.

17:00 MR. BURST: I have no further questions.

EXAMINATION

17:00 BY MR. POWELL:

17:00 Q. Say you were responding to an emergency like we're just talking. Even if you are there as a supervisor, do you do the same things as the others are doing?

17:00 A. Yes, sir.

17:00 Q. If you do a cell search or a head count, even if you're there as a supervisor, you're still doing the same thing as the others are doing?

17:00 A. Yes, sir.

17:00 Q. If you are participating in chaining the prisoners, even if you are there as a supervisor, are you still doing the same thing as the others are doing?

17:00 A. Yes, sir

17:00 MR. POWELL: Okay. That's all I have.

17:01 MR. BURST: No more questions.

(Deposition concluded)

ClibPDF - www.fastio.com