226

United States District Court
Southern District of Texas
FILED

AUG - 8 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EDWARD ALCALA, et al., | § | |
| | § | CIVIL ACTION NO. B-96-203 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| ALEX PEREZ, in his official capacity as | § | |
| Sheriff of Cameron County, Texas and | § | |
| Cameron County, Texas, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW EDWARD ALCALA, ET AL and make this their response to defendants' motion for summary judgmenet and would show the Court as follows:

I.

The defendants have not proven the elements to entitle the defendants to a bona fide executive exemption for jail lieutenants. To the contrary, the record shows that as a matter of law lieutenants were not employed on a salary basis. At a minimum there are genuine material issues of fact as to whether the jail lieutenants were exempt during the relevant time period. Plaintiffs assert that the lieutenants were no more than working foremen who spent more than fifty percent (50%) of their time in direct prisoner contact.

## Lieutenants In The Jail Were Not Exempt From The FLSA

As a matter of law, jail lieutenants were not exempt. At a minimum there are genuine material issues of fact as to the status of lieutenants.

An employer who claims an exemption under the FLSA bears the burden of proving that the exemption applies. *Mitchell vs. Kentucky Finance Co.,* 359 U.S. 290, 291 (1959). Exemptions should be construed narrowly and are limited to those who come plainly and unmistakably within the terms and the spirit of the Act. *Arnold vs. Ben Kanowsky, Inc.,* 361 U.S. 388 (1960); *Phillips vs. Walling,* 340 U.S. 490, 493 (1945); *Dole vs. Mr. "W" Fireworks, Inc.,* 889 F.2d 543, 546 (5th Cir. 1989). An employer may not claim an exemption unless it proves that it has complied with the regulations governing the exemption. *Usury vs. Associated Drugs, Inc.,* 538 F.2d 1191, 1194 (5th Cir. 1976). And, employers bear the burden of proving the status of employees for whom they have claimed an exemption. *Idaho Sheet Medal Works, Inc. vs. Wirtz,* 383 U.S. 190, 206 (1966). The defendants have not proven their entitlement to an exemption.

As a matter of law, the lieutenants in the jail and detention facilities were not bona fide executives. In order to be exempt, the employer has to prove that the primary duties of the employee are managerial and that the employee is paid on a salary basis. 29 C.F.R. § 541.1.

"Salary basis" for purposes of the FLSA means "receipt of a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because

of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). The employer may not make deductions from the "salary" for partial day absences. 29 C.F.R. § 541.118(3); *Auer vs. Robbins,* 519 U.S. 452 (1997).

Plaintiffs' "salary" is subject to partial day deductions. Defendants claim that each lieutenant receives the same amount of pay in each of defendant's twenty-six pay periods which therefore allegedly proves that the plaintiffs' salaries are not subject to deduction. Indeed, this would appear to be true if one did not know about the second set of books kept by the Sheriff's department. At some point in time, the auditor told the Sheriff's department that the auditor would not keep track of compensatory time, sick pay, or annual leave for the Sheriff's department. All the auditor wanted was a time sheet from the Sheriff's department for each employee. Rosie Gomez depo. pp. 19-21. It fell to Rosie Gomez, the Sheriff's department time and attendance clerk and others, to keep track of compensatory time, sick leave, and annual leave. She testified that when an officer was not present for his regularly scheduled shift, his absence would have to come from some category of accrued time. Rosie Gomez depo. pp. 20, 21, 25, 26, 35, 36. Therefore, there was no connection between time and attendance and the officer's pay check. The exempt status of employee's salary will be lost when absences are made up for out of banked vacation time or compensatory time because it is tantamount to a deduction in pay making the employee an hourly employee. *Spradling vs. City of Tulsa, OKLA,* 95 F.3d 1492 (10th Cir. 1996); *Avery vs. City of Talladega, Alabama,* 24 F.3d 1337, 1341-42 (11th Cir. 1994); and, *Reich vs. State of New York,* 3 F.3d 581 (2nd Cir. 1993). Finally, former Sheriff Alex Perez testified that if

somebody was out of vacation time, sick leave, or compensatory time and he took half a day off, he would be docked. Alex Perez depo. p. 30. Rosie Gomez gave examples of officers who had been docked. Rosie Gomez depo. p. 36. Jail Captain Luis Esparza gave an example of an officer who was docked because he was out of compensatory time and sick pay. Luis Esparza depo. p. 170-172. These instances were consistent with the policy as seen by assistant County Auditor Robert Almon. Almon depo. pp. 5, 15.

Therefore, not only has the defendant not proven that jail and detention lieutenants are employed on a salary basis, the evidence in light of applicable precedent shows exactly the opposite. The County is not entitled to an exemption for jail and detention and lieutenants as a matter of law.

### Even If As A Matter Of Law The Lieutenants At The Jail Were Not Exempt, The Lieutenants' Primary Responsibilities Are Not Management. Their Duties Are More Consistent with Production Employees And They Are No More Than Working Foremen And Therefore Not Exempt.

As stated above, in order to obtain the bona fide executive exemption, the employer must prove that the primary duties of an employee are managerial. A general rule of thumb, although not always dispositive, is that if the employee spends more than fifty percent of his time on non-managerial functions then the exemption does not apply. 29 C.F.R. § 541.103. Under the regulations, an executive employee also must have the authority to hire and fire or at least his recommendations as to hiring and firing will be given a particular weight. 29 C.F.R. § 541.106.

Lieutenant Abel Garcia testified that he has been at the jail for twenty-one years. A.

Garcia depo. p. 3. He started as a detention officer. After five years he became an assistant supervisor which completely involved interaction with inmates, the same as what a jailer did. A. Garcia depo. p. 5. The only difference between an assistant supervisor and a jailer is the title. There was no extra pay. Supervisors were later called . A. Garcia depo. p. 6. A sergeant's pay is only slightly higher than a detention officer's. A. Garcia depo. p. 10. assign detention officers to an area and approve the taking of a day off and arranging for someone else to cover. A. Garcia depo. pp. 11-12. do not discipline or make recommendations on punishment or discipline. A. Garcia depo. pp. 13-14, 22. do not evaluate detention officers. A. Garcia depo. p. 22.

As a lieutenant he takes care of the holding cells and doing things like taking prisoners to the restroom and answering inmates' questions. A. Garcia depo. p. 54. Lieutenant Garcia testified that other than the lieutenant there usually are about six officers on his shift and that is why lieutenants like himself have to replace the officers that were supposed to be there but were not. Lieutenants essentially take the place of the other officer or officers. A. Garcia depo. p. 58. He testified that he is in constant physical contact with the prisoners either escorting them or responding to emergencies. He spends fifty to sixty percent of his time on an eight hour shift doing activities, including, participating in head counts, cell searches, fire drills, all emergencies, fights and disturbances upstairs. And he also escorts prisoners to the courthouse. A. Garcia depo. pp. 59-60. On a typical day, he might spend an hour and fifteen minutes at his desk reviewing the routine duty logs, ' logs and standardized forms that are filled out for inspection and done on a daily basis. A. Garcia depo. p. 61. He often

*ALCALA/RESPONSE TO DEF MSJ/5*

transports prisoners because there are not enough officers available. A. Garcia depo. p. 62. They are working supervisors. They work while they supervise. A. Garcia depo. p. 71. Lieutenant Garcia testified that he can operate with five to six officers but it is risky because if there is a fight, at least two officers have to go enter the cell leaving every place else undermanned. They use a runner to circulate the floors. The runner is not there to guard a particular cell but he is counted as an officer in the ratio of one officer to every forty-eight prisoners. A. Garcia depo. p. 73.

Captain of the jail Luis Esparza testified that he started in 1993 as a detention officer and was soon transferred to booking but worked the floors when he was needed. Esparza depo. pp. 3-4. He testified that the job description for operations lieutenant and sergeant are not accurate because "since staffing is not meeting the operational standard, the lieutenant also has to participate and supervise at the same time because there is no way the job can get done without it." Esparza depo. pp. 20-21. Lieutenants are expected to respond to fights and cell searches as well as supervise them while participating in breaking up the fight or searching a cell. Esparza depo. pp. 21, 22. Because of jail design and the shortage of personnel, the jail is short staffed. He as the Captain, as well lieutenants and , must go on to the floors and cells because of short staff (such as eighty-five prisoners to one guard). Esparza depo. pp. 23, 25. Esparza testified that in 1993 and 1994, it was worse because they had nearly a thousand inmates and he had to go up and work by himself on a section with fifty-eight inmates. Esparza depo. p. 31.

Because of jail design, the Cameron County plan only complies with ratio

*ALCALA/RESPONSE TO DEF MSJ/6*

requirements on paper. He would need four guards instead of two to be in compliance on every shift. It has been this way since at April of 1993. Esparza depo. at pp. 37, 39. His instructions are to do the best he can with what he has and that is what requires him to ask so much of lieutenants. Esparza depo. p. 40. Esparza testified that lieutenants do cell searches. They help with the head count. They fill in for the detention officers that are absent or when they are shorthanded. They transport. They do their rounds. They spend most of their day on the floors dealing with prisoners. He believes lieutenants spend seventy percent of their time on the floor dealing with prisoners and prisoner issues. Esparza depo. pp. 143-144. During the relevant time period, 1993 to 1996, they were really short of manpower and they all did what they had to do to get the job done, including lieutenants. Esparza depo. p. 145. Esparza depo. p. 146. One reason why lieutenants have to do the rounds and be on the cell blocks is because there are some situations which are really undermanned, for instance, one hundred seventy-two prisoners on the third floor with only two regular guards, so someone has to be circulating to keep up the manpower on the floors. Esparza depo. p. 147. They have to count the lieutenant as a body for prisoner/guard ratios because the lieutenants make their rounds and observe the inmates and make sure the facility is secure. Esparza depo. p. 148. He has to use the lieutenants in the ratio because the standards say "direct continuous supervision." Esparza depo. pp. 153-154. He himself does rounds. Esparza depo. p. 155. He thinks he spends an hour behind the desk each day doing paperwork. Esparza depo. p. 156. Lieutenants supervise as they are physically involved. Esparza depo. pp. 161, 191, 192.

*ALCALA/RESPONSE TO DEF MSJ/7*

This testimony is squarely within the regulatory definition of "working foreman". 29 C.F.R. 541.115(b)(c). This is a working supervisor who works alongside his subordinates. They perform essentially the same kind of work as the subordinate but also carry supervisory functions. This work is counted as non-exempt and if the amount of said work is substantial, meaning more than <u>twenty percent</u>, then the exemption does not apply. Further, even if such a supervisor performs a substantial amount of work that his subordinates do not perform, which is essentially production, a routine recurrent and repetitive task, the exemption also does not apply. See, § 541.115. ***Reich vs. State of New York,*** 3 F.3d 581 (2nd Cir. 1993) (State criminal investigators were not exempt under the administrative exemption even though they have the rank of sergeant and supervised troopers in their investigations. The primary duties of the officers was prevention, investigation and detection of crime. Investigators were on the "production end of the scale" and not the administrative side).

Cameron County jail lieutenants are on the line as it were and "producing" what the average jailer produces, i.e., supervision, control and safety of prisoners. Even the paperwork which the lieutenants perform is routine record keeping which would not qualify for management exemption status even if it was performed in any substantial amount. 29 C.F.R. § 541.115(c)(3). At best, the Cameron County jail lieutenants are working foremen and as such do not entitle the defendants to an exemption for these personnel. ***Brock vs. Normans Country Market, Inc.,*** 835 F.2d 823 (11th Cir. 1988) cert. den. 487 U.S. 1205 (1988). The defendants have not proven their entitlement to an exemption. Plaintiffs submit that based upon the record testimony, they have shown that they are working foremen.

*ALCALA/RESPONSE TO DEF MSJ/8*

However, in the alternative, at a minimum, there is a genuine issue of material fact as to the exempt status of the jail lieutenants.

As a matter of law, lieutenants are not paid on a "salary basis" and the defendant has not proven that it is entitled to an exemption under bona fide executive. At a minimum there are genuine issues of material fact concerning the status of the jail lieutenants' status as nonexempt working foremen.

WHEREFORE, Plaintiffs pray that the Defendants' Motion for Summary Judgment be denied and that the case continue to trial.

Respectfully submitted,

HINOJOSA & POWELL, P.C.
612 Nolana, Suite 410
McAllen, Texas 78504
Telephone: 956/686-2413
Facsimile:  956/686-8462

By: _____
George P. POWELL
State Bar No. 16196000

## CERTIFICATE OF SERVICE

I, GEORGE P. POWELL, do hereby certify that on this the 8th day of August, 2001, I caused to be mailed a true and correct copy of Plaintiffs' Response Defendant's Motion for Summary Judgment to defendants' attorney of record:

Mr. Richard O. Burst
**Legal Division Commissioners' Court**
964 E. Harrison St.
Brownsville, TX  78520

_____
GEORGE P. POWELL

*ALCALA/RESPONSE TO DEF MSJ/9*

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF HIDALGO | § |

BEFORE ME, the undersigned authority, on this day personally appeared GEORGE P. POWELL, who, by me, being duly sworn upon his oath, deposed and stated the following:

My name is George P. Powell. I am over the age of 20 and competent to make this affidavit. I am the attorney of record for the plaintiffs in Civil Action No. B-96-203; Edward Alcala, et al vs. Alex Perez, in his official capacity as Sheriff of Cameron County, Texas and Cameron County, Texas. The attached copies of the deposition pages of Sheriff Alex Perez, pp. 30; Robert A. Almon, pp. 5, 15; Rosa L. Gomez, pp. 19-21, 25-26, 35-36; Luis Esparza, pp. 3-4, 20-23, 25, 31, 39-40; Vol. 2, 143-144, 146, 147, 148, 153-154, 155, 156, 161, 170-172, 191-192; and, Abel Garcia, pp. 3, 5-6, 10-12, 13-14, 22, 54, 58-62, 71, 73 are true and correct copies of the original which they purport to be.

_____
GEORGE P. POWELL

SUBSCRIBED AND SWORN TO BEFORE ME, by the said George P. Powell, on this the 8th day of August, 2001, to witness my hand and official seal of office.



_____
NOTARY PUBLIC, STATE OF TEXAS

*ALCALA/RESPONSE TO DEF MSJ/10*